Argued February 2; affirmed March 8, 1938

# POINTER *v.* OSBORNE
## (76 P. (2d) 1134)

Department 2.

*Joseph A. McKeown*, of Marshfield (Liljeqvist, Swanton & McKeown, of Marshfield, on the brief), for appellant.

*E. E. Laird*, of Myrtle Point, and *J. W. McInturff*, of Marshfield (Dement & Laird, of Myrtle Point, and J. W. McInturff, of Marshfield, on the brief), for respondent.

BAILEY, J. This action was instituted to recover damages for personal injuries suffered by the plaintiff as a result of the overturning of an automobile in which he was riding as a guest of the defendant. From a judgment in favor of the plaintiff the defendant has appealed.

According to the allegations of the complaint the injuries were sustained by the plaintiff on March 9, 1936, while he was riding in an automobile owned by defendant's wife, Barbara Osborne, and being driven, with her knowledge and permission, by the defendant. The accident occurred on Rock Creek road, which is alleged to be mountainous, narrow, with sharp curves, in a rough and dangerous condition, "and not suitable for automobile travel thereon at a rate of speed greater than thirty (30) miles per hour, particularly at and adjacent to the place of the accident". The motor vehicle, a Reo sedan, was "provided with rear springs that were excessively live, so that unless controlled, any shock or jar to the wheels would be communicated to the body of the car in a violent manner causing the upward movement of the body to tend to jerk the rear wheels off the ground, thereby causing the operator of

said automobile to lose control thereof when traveling over rough or 'washboardy' roads at any speed in excess of twenty-five (25) miles per hour." The complaint further alleges that the hydraulic shock absorbers with which the car was equipped were out of repair, due to the fact "that the oil had escaped therefrom, leaving said rear springs without necessary control".

The defendant, according to the allegations of the complaint, was at the time of the accident operating the said automobile while in an intoxicated condition. After alleging that the injuries suffered by the plaintiff were caused by the tipping over of the automobile "with great force and violence", the complaint states:

"That said accident was caused solely by the gross negligence of the defendant; by his reckless disregard of the rights of others and particularly of the rights of this plaintiff, and by his intoxication in the following respects, to-wit:

"1. Said defendant with gross negligence, recklessly, and because of said intoxication, operated said car which was then in said condition, over a narrow road filled with deep chuck holes and sharp ridges, at an excessive rate of speed, viz.: more than forty-five (45) miles per hour in the immediate vicinity of a sharp curve upon said road, and while said automobile was in the defective condition stated."

Five other subdivisions of the general charge of negligence are set forth, each beginning with the following language: "Said defendant with gross negligence recklessly and because of said intoxication". The five specifications are: driving the automobile at an unreasonable rate of speed under the circumstances; failure to have due or any regard for the width or surface of the road or the proximity of the sharp curve; driving the automobile at a speed greater than would permit defendant to exercise proper control thereof;

failure to reduce the speed of said vehicle when approaching a sharp curve "that was plainly visible for a distance of at least two hundred (200) feet to any driver in normal condition"; and driving with the "said automobile upon and off his left hand side of the traveled portion of said highway", causing the car to run "into a steep bank at a high rate of speed, thereby tipping the same over with great force and violence."

The complaint then avers that as "a direct result of said gross carelessness, recklessness and intoxication, as aforesaid, and as a direct result of said accident, plaintiff received the following injuries to his person", enumerating the injuries which the plaintiff claims to have sustained.

The answer admits the ownership of the car, the operation thereof by the defendant, the tipping over of the automobile, and plaintiff's suffering "some injuries", but denies that the defendant was intoxicated or guilty of gross negligence or any negligence, and affirmatively alleges that the accident was caused in the following manner: ". . . said car struck a portion of said highway that was rough, and defendant's right foot which was upon the gasoline foot throttle . . . suddenly pressed down upon said foot throttle", thereby sending the car forward, and "before the defendant was able to release his foot from said throttle said car suddenly ran up and along the side of said steep bank causing said motor vehicle to overturn." The defendant, by way of affirmative defense, further alleges contributory negligence on the part of the plaintiff in entering and remaining in the automobile without remonstrating with the defendant as to his mental or physical condition, the rate of speed or the manner in which he was driving the automobile. A further defense, that the fishing trip was a joint venture of the defendant

and his three companions, was taken from the jury by the court, and no error is assigned in respect to such ruling. The affirmative matter in the answer was put in issue by the reply.

The facts in the case are substantially the following: About noon on March 9, 1936, the defendant, who operates a beer parlor and card room at Myrtle Point, Oregon, decided to go on a fishing trip. He invited his brother, Roy Osborne, a Mr. Tucker and the plaintiff to accompany him. A quart of whisky and twelve cans of beer were provided by the defendant for the trip, and Roy Osborne furnished a pint of whisky. After eating lunch, shortly before 1 p. m., the defendant and the plaintiff went to Roy Osborne's home, and the three men there had one drink of whisky each. From Roy's home they went to pick up Mr. Tucker, and left Myrtle Point about 1:30 p. m.

In the car, without stopping, the defendant, his brother and the plaintiff each took a drink of whisky followed by beer, Tucker confining his drinking to beer only. They arrived at the first stop for fishing about 2:30 o'clock and remained there for an hour or possibly an hour and a half. According to the plaintiff's testimony, all the party except Tucker took a drink of whisky when they first stopped to fish, and he thought they had another drink before leaving, while according to defendant's version nobody took a drink here until the party was preparing to go on farther, when the defendant took another drink. Roy Osborne stated that all but Tucker took a drink as soon as they arrived at each fishing place. Tucker did not testify.

After going up the river about half a mile farther the party again stopped and all fished except the plaintiff. The defendant was wearing high-topped boots and in attempting to wade the stream, after fishing

for an hour to an hour and a half, he slipped on moss-covered rocks and fell into the water, losing his fishing equipment. He climbed out on the bank, removed his boots, coat and trousers, dived into the water and recovered his equipment. The defendant then returned to the car, shaking from the cold and with teeth chattering, and dressed, borrowing some of plaintiff's clothing.

The automobile was equipped with a heater, and the defendant, after starting the engine in order to warm himself in the car, closed the windows of the car and they remained closed, with the heater operating, until after the accident. The defendant took two drinks of whisky, one before and another after getting into the car. The plaintiff saw him take only one drink at that time. There is evidence that the defendant stated sometime after the accident that he had taken "three slugs of whisky" after his immersion, although he testified that he did not believe he took more than two drinks. No one else seems to have taken a drink at this time. All the drinking was direct from the bottle, and no one undertook to state the amount of liquor consumed singly or in the aggregate. During the afternoon the defendant drank beer only once, and then following a drink of whisky.

The car was parked off the road and the defendant and his companions spent some 10 or 15 minutes in getting it over a hump and back on the highway. The accident occurred about two and one-half to three miles from the second stopping place, during the drive back to Myrtle Point, on what is mentioned in the pleadings and briefs as Rock Creek road but is shown on the map in evidence as Myrtle Creek county road. The main traveled part of the road is 14 to 15 feet wide, in most places, with gravel surface, and the shoulders are of

earth covered with loose river gravel. A short distance beyond the place where the car upset, not more than 40 feet, the road narrows to 13 feet.

Between the place where the fishing party made the second stop and the scene of the accident the road for some distance is winding, with sharp curves, and is so narrow in places that two automobiles cannot easily pass. The car upset some 275 feet beyond a bridge crossing Rock creek, on a curve which was easily visible for 500 to 700 feet to one approaching it from the direction of defendant's car. At a point perhaps 180 feet beyond the bridge the road turns to the right on a curve of approximately 40 degrees. At the outer edge, on defendant's left side as he drove, there is a high embankment, and on the inner side a high board fence. Approaching the bridge from the south, as defendant's car did, there is a three per cent down grade in the road, with a 13-inch rise at the south end of the bridge and a drop of 10 inches at the north end, where the grade of the road rises one per cent. In the roadway there were numerous chuckholes which were not visible from any appreciable distance. The surface of the road was wet on the day of the accident.

When the fishing party started toward Myrtle Point the defendant for a short distance drove at a moderate rate of speed, which was, however, increased until at the time of the accident the car was traveling at a rate estimated at 45 to 60 miles per hour. Whatever the exact speed may have been, there is evidence that the homeward drive on the Rock Creek road was proceeding much faster than the outward trip on the same road. As the automobile passed over chuckholes the rear end swayed from one side to the other. After passing over the bridge the car hit a chuckhole with an impact that threw the plaintiff upward so that his head struck the

top of the car and he was rendered unconscious. At the curve the automobile continued in approximately a straight line, crossing the roadway to the left side and climbing up the embankment, where it turned completely over and landed right side up, injuring plaintiff and the other occupants of the car.

The plaintiff testified that when the party started home there was nothing in the way the defendant acted to indicate that he was under the influence of liquor, although he did appear to be chilled from falling into the water, which was very cold. Roy Osborne testified that his brother, shortly after starting to drive back to Myrtle Point, jerked the car a good deal, which he attributed to the fact that the defendant was cold. When the defendant increased the speed of the car to a degree which both the plaintiff and Roy Osborne considered too fast for the condition and character of the road they protested to the defendant, although their remonstrance did not seem to cause him to reduce the speed of the car.

As heretofore pointed out, the accident occurred only two and one-half to three miles from the fishing party's last stop. There is some evidence that the defendant's car attained the highest speed attributed to it just prior to the accident. The real cause of the accident is not clearly shown by the record, but it is apparent that if the defendant attempted to follow the road at the curve his failure to do so might have been due to the speed of the car, the wetness of the highway and the general roughness of the road, or to the defendant's possible incapacity from whatever cause. It is intimated by counsel for the plaintiff that the liquor which the defendant drank before starting toward Myrtle Point and the closeness and heat inside the car may have brought

on a degree of intoxication in the defendant, which made him indifferent to the speed with which he was traveling and the condition of the road. The evidence is uncontradicted that the defendant had traveled this road many times and was entirely familiar with the curves and the nature of the roadway. He had frequently driven the car he was then using and was thoroughly accustomed to it. The accident happened in daylight, around 5 o'clock in the afternoon. The defendant himself testified in one instance, when asked whether he ever drank or not: "I take a drink every day, maybe one, maybe two, maybe three, but I drink every day, some, always have." He further stated that he very seldom drank to excess or became intoxicated, and that he did not believe that two drinks would have much effect on him. He testified that he was not intoxicated at the time of the accident.

It is the contention of the defendant that "the allegations of gross negligence and reckless disregard of the rights of the plaintiff are in each case in the complaint tied into and based upon alleged intoxication" and therefore the plaintiff is not entitled to recover unless the defendant at the time of the accident was intoxicated and the plaintiff's injuries were due to such intoxication. Based upon his theory of the case the defendant requested the court to give an instruction to that effect, and the refusal to give such instruction is the basis of one of his assignments of error. It is argued by defendant in support of this contention that although the complaint alleges generally that the accident was caused (a) by the gross negligence of the defendant, (b) by his reckless disregard of the rights of the plaintiff and (c) by defendant's intoxication, nevertheless, these general allegations are followed by specific charges of negligence, each such separate charge

stating that "said defendant with gross negligence recklessly and because of said intoxication" did the various acts mentioned.

██ Taking the complaint as a whole, it is apparent that the plaintiff did not intend to allege that his injuries were due solely to the defendant's intoxication. The expression "because of said intoxication" does not limit and qualify the alleged gross negligence of the defendant, and the plaintiff is entitled to recover if his injuries were caused by the gross negligence of the defendant or by defendant's intoxication. In other words, it was not necessary for plaintiff to prove that the defendant was guilty of both gross negligence and intoxication, or that defendant's gross negligence consisted only in intoxication and such intoxication was the cause of plaintiff's injuries.

At the close of plaintiff's case the defendant moved for a judgment of involuntary nonsuit against the plaintiff, the ground of said motion being that plaintiff had knowledge of defendant's use of intoxicating liquor and even aided, abetted and encouraged him in such use, and knew of his physical and mental condition at the time the fishing party started home, and that by entering, remaining in and riding in the car with the defendant the plaintiff was guilty of contributory negligence. At the close of the whole case the defendant moved for a directed verdict in his favor, without specifying the grounds of such motion. Upon the denial of these two motions are predicated two of the defendant's assignments of error.

In the recent case of *Koski v. Anderson,* 157 Or. 349 (71 P. (2d) 1009), wherein the question arose whether a guest was precluded from recovering when she had entered and ridden in an automobile, knowing that the

driver had been drinking intoxicating liquor, this court said:

"It is the duty of a passenger in an automobile operated by another not for hire to use ordinary care for his own safety. The test by which the care or want of care of a passenger so riding is to be determined is what a reasonably prudent man, under the circumstances disclosed by the evidence in the individual case, would have done to insure his own safety after he had become, or, with the exercise of reasonable diligence upon his part, would have become, aware of the peril. Whether he has done so or not is ordinarily a question for the jury and, therefore, unless the evidence clearly shows that the injured party had failed to perform that duty and that, by reason thereof, he had sustained the injury complained of, the court would not be authorized to direct a nonsuit."

The appellate court of Kentucky, in *Toppass v. Perkins' Administratrix,* 268 Ky. 186 (104 S. W. (2d) 423), discusses the subject of contributory negligence of a guest or passenger in an automobile driven by an intoxicated person, and adopts from Blashfield's Cyclopedia of Automobile Law (Permanent Ed.), § 2453, the following as a correct rule of practice: "Usually it is a question of fact whether a driver was so far intoxicated at the time of an accident as to affect his ability to operate the car, and whether his passenger had any cause, in the exercise of ordinary care, to be apprehensive on that account for his own safety."

See, also, *Fitzpatrick v. Cinitis,* 107 Conn. 91 (139 Atl. 639).

In the instant case the plaintiff knew that the defendant after diving into the cold stream for his fishing equipment had taken a drink of whisky, but did not know that he had taken a second or perhaps a third drink before beginning the homeward drive. No one except the defendant took a drink at that time. Plain-

tiff noticed nothing about the defendant, he testified, which indicated that he was under the influence of liquor. Roy Osborne, however, testified that he believed that the defendant was intoxicated at the time of the accident. His opinion was based on the driving of the defendant and the latter's statement to him a few days after the accident that he, the defendant, had taken "two or three big slugs of whisky" a few minutes before leaving the last fishing place.

■■ There is in the record, as hereinbefore mentioned, evidence that both the plaintiff and Roy Osborne protested to the defendant about his driving, before the mishap occurred. Their remonstrances seem to have been called forth by what they observed of the defendant's driving around sharp curves in the close vicinity of the place of the accident. Only a few minutes at the most intervened between the party's start for home and the overturning of the car. The question of whether the plaintiff's injuries were due to the gross negligence or intoxication, or both, of the defendant, or whether the plaintiff was guilty of contributory negligence, under the facts as hereinbefore stated, was properly submitted to the jury: *Koski v. Anderson,* supra; *Layman v. Heard,* 156 Or. 94 (66 P. (2d) 492); *Herzog v. Mittleman,* 155 Or. 624 (65 P. (2d) 384, 109 A. L. R. 662); *Storm v. Thompson,* 155 Or. 686 (64 P. (2d) 1309); *Younger v. Gallagher,* 145 Or. 63 (26 P. (2d) 783).

The character and condition of the roadway, the rate of speed at which the defendant was driving and the manner in which the accident occurred made it a question for the jury to decide whether the defendant was guilty of gross negligence. See authorities above cited.

■ The bill of exceptions contains 19 assignments of error, only 12 of which are referred to and discussed

in appellant's brief. Of the latter group, practically all those not hereinbefore mentioned are based on the refusal of the court to grant certain instructions requested by the defendant and on exceptions taken by the defendant to instructions given by the court. We have given careful consideration to these remaining assignments of error and no good purpose would be served by discussing each one in detail. The instructions given by the court fully covered the issues made by the pleadings and fairly presented to the jury the questions which it was called upon to decide. In any case the instructions should be viewed as a whole. Certain language used by the court, if considered separate and apart, may give an altogether different impression from the effect when interpreted in the light of the entire charge.

■ The jury awarded the plaintiff $2,000 general damages and $301 special damages. The special damages were for physicians', surgeons', nurses' and hospital charges. There seems to be no question that those expenses were incurred by the plaintiff. The allowance for general damages is indeed moderate in view of the injuries suffered by the plaintiff.

No error prejudicial to the defendant was committed by the court in the trial of this case, and therefore the judgment appealed from should be affirmed. It is so ordered.

BEAN, C. J., and RAND and LUSK, JJ., concur.