Argued December 3, 1941; affirmed January 6; rehearing denied
February 17, 1942

WILLOUGHBY *v.* DRISCOLL ET AL.

(120 P. (2d) 768, 121 P. (2d) 917)

Before KELLY, Chief Justice, and RAND, BELT, ROSS-
MAN, BAILEY, LUSK and BRAND, Associate Justices.

*Lamar Tooze* and *James Arthur Powers,* both of
Portland (Cake, Jaureguy & Tooze, of Portland, and
Mark V. Weatherford, of Albany, on the brief), for
appellants.

*Borden Wood,* of Portland (McCamant, Thompson,
King & Wood and Robert S. Miller, all of Portland, on
the brief), for respondent.

BELT, J. Plaintiff, a young woman 33 years of
age, brought this action to recover damages for per-
sonal injuries sustained in an automobile accident
which she alleges was caused by the gross negligence
of the defendants. Plaintiff was riding in the automo-
bile, at the time in question, as a guest of her aunt,

the defendant Myrtle L. Driscoll, owner of the car. It was being driven by the defendant Gordon Harris. There were numerous charges of negligence against the defendants, but the gravamen of the complaint was that the defendant Harris had become intoxicated and went to sleep at the wheel, allowing the car suddenly and unexpectedly to leave the highway and go down a steep embankment. Defendant Driscoll, as owner of the car, was charged with negligence in failing to exercise her right of control over its operation notwithstanding her knowledge that the driver was intoxicated and unable to drive it properly or safely.

Defendants denied the charge of negligence and, as an affirmative defense, alleged in their answer that the plaintiff was guilty of contributory negligence in failing to exercise due care for her own safety. More specifically, defendants contend that plaintiff had knowledge that Gordon Harris, the driver, was indulging in intoxicating liquors and "was in a position to know the risk and danger, if any there was, in riding in said car."

The cause was submitted to a jury and a verdict returned in favor of the plaintiff and against both defendants in the sum of $15,000. From the judgment entered thereon, the defendants appeal.

■ The motions for a judgment of involuntary nonsuit—interposed separately by each of the defendants—present the question as to whether there is any substantial evidence to support the judgment. When the sufficiency of the evidence is thus challenged, the court must view the record in the light most favorable to the plaintiff. Furthermore, plaintiff is entitled to the benefit of every reasonable inference that can be drawn from the evidence in her favor. Hence the state-

ment of the facts will be made in the light of the above elementary principles of law.

The plaintiff, Lucile Willoughby, resided in the city of Portland and, for several years, had been engaged in secretarial work. On Saturday, July 22, 1939, she went to Corvallis, Oregon, to spend the week-end with her aunt, who maintained a rooming house. Gordon Harris, who operates a men's furnishing store in the city of Corvallis, was one of her aunt's roomers.

On the following day, Sunday, the weather was extremely warm and it was decided to drive to the coast about fifty-seven miles distant. Before leaving Corvallis at about 1:30 in the afternoon, Harris, acting as "bartender", served each of the ladies and himself a rum cocktail. The plaintiff says that she spilled her drink and therefore had none. While en route to the coast, Harris and Mrs. Driscoll each had two drinks from the bottle of rum and fruit juice. Plaintiff asserts that she did not drink. When the parties arrived at Newport on the coast—Harris doing all the driving— they went to call upon a friend of Harris's who was living in an automobile trailer house and, while there, they were served with a drink of whiskey. Plaintiff, according to her testimony, did not drink.

After they left the trailer house, the parties went to the Abbey House at Newport where each—including the plaintiff—had a short beer. After having had dinner across the street at Allen's Cafe, at about 4:30 in the afternoon they drove south along the coast to Waldport, a distance of about sixteen miles, for the purpose of visiting Mr. Harris's brother who had rented a cottage at such place. A "crab festival" was in progress at Waldport and the Harrises were having open house, serving crab and beer. Plaintiff testi-

fied that hard liquor was also drunk but that she did not see defendant Harris drink any. She says she drank only a can of beer. Defendant Harris was not certain about having drunk any intoxicating liquor at his brother's place. He said that he "might have had some drinks there but that he did not remember of having any."

"Q. It might be whiskey drinks or any kind of drinks? Probably it would be whiskey because you don't like beer? A. If I drank anything at all, it would be that, but I didn't have anything that I recollect."

Mr. Earl Harris testified that, at his house, he heard Mrs. Driscoll tell his brother, "Now, you have to drive home and no drinks."

From the Harris cottage the plaintiff and the defendants went to the Silver Tavern, a beer "parlor" at Waldport where each of them had a large beer. While at the tavern they picked up a stranger who desired to ride to Corvallis. Leaving the tavern at about 9 o'clock in the evening—Gordon Harris driving—they proceeded eastward on the Waldport-Corvallis highway. Before starting, Mrs. Driscoll was seated behind the wheel, but Harris requested her to let him drive and she moved over, allowing him to take the wheel. The stranger was also riding in the front seat. Plaintiff was in the back seat. After having gone a short distance, the car was stopped to permit Mrs. Driscoll and the stranger to get into the back seat, plaintiff moving to the front seat with the driver. The parties thereupon proceeded on their way and, after having traveled about eight miles, Harris rounded a sharp turn and suddenly went to sleep, the car running off the highway and down a 35-foot embankment.

Mr. Granville Yocom, his wife, and his son Harold—who is 19 years of age—came along the highway soon after the accident occurred, saw the overturned car and went immediately to render assistance. As a result of the car's going down the embankment, plaintiff's spine was permanently injured and there is a complete paralysis of the lower limbs. There was some difficulty in getting plaintiff out of the car and up the steep embankment. Defendant Harris started to aid Mr. Yocom in carrying the young woman up the bank, but after about two or three steps gave up the task. Apparently Harris was in no condition to render much assistance as is evidenced by the fact that he let the door fall on the plaintiff's arm while the Yocoms were working to get her out of the car. Some mention was made about pulling plaintiff's dress down over her legs. Harris is said to have responded, "Oh, hell, that don't make any difference."

Mr. Granville Yocom thus testified in reference to the alleged intoxication of the defendant Harris: "My impression of the gentleman was that he was either stunned or very much under the influence of liquor." He also testified:

"No, I didn't smell any liquor on his breath, but I did from his attitude towards the girl when she was in the car and afterwards in his attitude towards the condition of her clothes and everything in general. I was under the impression that he was under the influence of liquor."

Harold Yocom testified that he smelled whiskey on Harris's breath and that he was under the "impression" that Harris "was under the influence of liquor all right."

There is no evidence tending to show careless or reckless driving by Harris prior to the accident. He

was familiar with the highway and considered it dangerous on account of its numerous sharp curves. Harris said he experienced no feeling of drowsiness prior to the accident. Plaintiff testified that she never observed anything wrong with Harris's ability to drive and that "he seemed perfectly all right." Plaintiff also testified that there was not anything to indicate that Harris was "under the influence of liquor at all." Mrs. Driscoll was asleep in the back seat at the time of the accident and therefore did not, as a witness, throw much light on the situation. The "stranger" disappeared immediately after the accident and left for parts unknown.

Defendants in support of their motion for nonsuit contend: (1) That there is no substantial evidence tending to show gross negligence or that the car was being operated with reckless disregard of the safety of the plaintiff; (2) that there is no substantial evidence that the driver Harris was intoxicated; (3) that there is no showing that the negligence charged was the proximate cause of the injury; and, (4) that plaintiff was guilty of contributory negligence as a matter of law.

Defendant Driscoll also moved separately for a nonsuit and, in addition to the above grounds, urged that plaintiff, as a guest, had no cause of action against her, as owner of the car, on account of the alleged gross negligence or intoxication of the driver.

An action by a guest against the owner or operator of an automobile is controlled by § 115-1001, O. C. L. A., which provides:

"No person transported by the owner or operator of a motor vehicle as his guest without payment for such transportation shall have a cause of action for

196

damages against such owner or operator for injury, death or loss, in case of accident, unless such accident shall have been intentional on the part of said owner or operator or caused by his gross negligence or intoxication or his reckless disregard of the rights of others.''

 At common law, according to the great weight of authority, the owner or operator of an automobile owed to an invited guest the duty to exercise reasonable care in the operation of the car. Liability could be predicated upon ordinary negligence: *Stewart v. Houk,* 127 Or. 589, 271 P. 998, 272 P. 893, 61 A. L. R. 1236; *Goebel v. Vaught,* 126 Or. 332, 269 P. 491; Shearman & Redfield on Negligence (Rev. Ed.), Motor Vehicles § 692; Berry on Automobiles (7 Ed.) § 5.104. Also see cases in notes 65 A. L. R. 952 and 51 A. L. R. 581. The minority rule, under the common law, required the guest to establish gross negligence before recovery could be had against the host, but such view was expressly repudiated by this court in *Goebel v. Vaught,* supra.

Furthermore, at common law, the owner was responsible for the negligence of the driver, if at such time and place he was acting within the scope of his authority. That the doctrine of respondeat superior applied in such cases, in the absence of statute to the contrary, see numerous authorities in note 65 A. L. R. 955. It would be immaterial whether the owner were present or not if the injury to the guest was the result of the negligence of the driver while acting for and on behalf of the owner. Of course a stronger inference of agency would arise than that based upon ownership alone where the owner is riding in the automobile at the time of the accident and acquiesces in its operation:

Berry on Automobiles (7 Ed.) § 4.401; Huddy on Automobiles (9 Ed.) § 116. In the instant case, we think there can be no doubt about the relationship of agency existing between Mrs. Driscoll, the owner, and Mr. Harris, the driver: *Herzog v. Mittleman*, 155 Or. 624, 65 P. (2d) 384, 109 A. L. R. 662. Harris was unquestionably driving the car with the owner's knowledge and consent and in furtherance of her interests. Mrs. Driscoll had the right of control over the car whether she exercised such right or not.

■ The statute (§ 115-1001, O. C. L. A.) is in derogation of the common law rule relative to the right of a guest to bring an action against the owner or operator for the negligent operation of an automobile and must be strictly construed. It denies the right of the guest to bring such action unless the accident was caused by the gross negligence or intoxication of the operator or by his "reckless disregard of the rights of others." There is no contention that the accident was "intentional" on the part of the owner or operator.

■ Appellants contend there is no evidence of intoxication. We are aware of Harris's testimony that, in his opinion, he was not drunk. When his attention was called to the mixing of the drinks, Harris answered with commendable frankness that this was "where I made my mistake." While the court entertains considerable doubt about defendant's conclusion concerning his state of sobriety, it certainly concurs with him as to the mistake he made in the mixing of the drinks. Rum, fruit juice, whiskey, and beer! What a potent mixture! It is not surprising that Harris had a sudden and complete "blackout." At any rate, we think there is ample evidence from which the jury could draw the

reasonable inference that he went to sleep at the wheel because he was intoxicated.

■ "Intoxication", as used in the guest statute, means being under the influence of intoxicating liquor to such an extent as to materially affect a driver's ability to operate a motor vehicle. It means the impairment of a person's physical or mental control: Shearman & Redfield on Negligence (Rev. Ed.), § 700. A person is intoxicated within the meaning of the guest statute when he is under the influence of an intoxicating liquor to such an extent as to tend to prevent him from exercising the care and caution which a sober and prudent person would have exercised under the same circumstances. However, in the instant case, it seems idle to discuss the distinction between "being under the influence of intoxicating liquor" and "intoxication" as we think the jury believed that Harris was not only under such influence but that he was also drunk. If Harris was intoxicated, within the meaning of the statute, and by reason thereof went to sleep at the wheel, allowing the car to go off this high grade, it would seem, as a common-sense proposition, that he was guilty of gross negligence.

■ It was not necessary to show that Harris was so drunk he could neither walk nor talk. Relative to such issue, the court thus properly instructed the jury:

"* * * if you find from the evidence in the case that the defendant during the day of July 23, 1939, had imbibed intoxicating liquor, and if you find that it influenced him to the extent that it would be unsafe for him to operate the automobile, that it would affect his operation of the car, then you would have a right to consider this question in considering as to whether or not he was guilty of gross negligence and whether or not he operated the car in disregard to the rights and safety of plaintiff."

 It is urged that the mere fact that defendant Harris went to sleep at the wheel is not sufficient evidence to support a finding of gross negligence. We might well agree that such evidence, when considered by itself, would not establish gross negligence, but the jury was not obliged to single out and pass separately upon the various elements which entered into the defendant Harris's conduct. In determining the issues of negligence, the jury was entitled to weigh the evidence in its entirety and to consider all the facts and circumstances of the case. Why did the defendant go to sleep? He had not driven such a distance as would ordinarily cause fatigue. There was no unusual loss of sleep on the night prior to the trip. It could not well be attributed to the cool ocean breezes on this summer night in question. Is it not reasonable that "booze" was the cause of Harris's sudden and unexpected sleepiness? In consideration of this phase of the case, it is rather significant that Mrs. Driscoll also "passed out" just prior to the accident and abandoned her right of control to the driver. Clearly, the issue of gross negligence and intoxication was, under such facts and circumstances, for the determination of the jury. Each case is dependent upon its own factual situation and there is not much to be gained by an exhaustive review of the authorities. In support of the conclusion herein reached, see: Berry on Automobiles (7 Ed.) § 5.129; 5 Am. Jur., Automobiles, § 688; *Blood v. Adams*, 269 Mass. 480, 169 N. E. 412; *Pickering v. Stearns*, 182 Wash. 234, 46 P. (2d) 394; *Lee v. Moore*, 168 Va. 278, 191 S. E. 589; *Steele v. Lackey*, 107 Vt. 192, 177 A. 309; *Ryan v. Scanlon*, 117 Conn. 428, 168 A. 17.

 Whether plaintiff was guilty of contributory negligence was a question of fact for the jury. Such

issue was submitted under the following clear and explicit instruction:

"If you find from the evidence in the case that the defendant Harris while operating the automobile prior to the accident was in an intoxicated condition or was under the influence of intoxicating (liquor) to the extent that he was incapable of safely operating said car, and if the plaintiff while a passenger therein knew, or in the exercise of reasonable care should have known such fact; and if you further find that a person of ordinary prudence under the same or similar circumstances would have remonstrated against the defendant Harris driving the automobile or would have requested that the automobile be stopped to permit the passenger to remove himself from the car, then under such circumstances it became the duty of the plaintiff to so remonstrate or to make such a request, and if such fact, if it was a fact, contributed to the accident, then I instruct you that the plaintiff could not recover in this case."

Plaintiff had only a slight acquaintance with Harris. It is reasonable to assume that she did not know of his capacity to take hard liquor. She was an invited guest and had no control over the operation of the car. When tested by the standard of what an ordinarily prudent person would have done under the same circumstances, we cannot hold as a matter of law that the plaintiff was guilty of contributory negligence: *Pointer v. Osborne*, 158 Or. 573, 76 P. (2d) 1134; *Koski v. Anderson*, 157 Or. 349, 71 P. (2d) 1009.

Relative to defendant Driscoll's separate motion for nonsuit, the question is presented whether the gross negligence of Harris, the driver, can, under the guest statute, be imputed to the owner. We have shown that, in the absence of such statute, the common law doctrine of respondeat superior would apply. The negli-

gence of the driver while acting within the scope of his agency would become the act of the owner. We are unable to see from the language of § 115-1001, O. C. L. A., that it was the intention of the legislature to relieve the owner of liability for damages resulting from the gross negligence or intoxication of the operator if at such time and place the latter was acting for and on behalf of the owner. What the legislature had in mind was to require the guest to establish a stronger case than that based upon ordinary negligence before recovery could be had against the owner or operator of an automobile. If the statute be given the narrow construction that the owner cannot be held responsible for the negligence of his agent, even though the latter be acting within the scope of his authority, no cause of action could ever be stated by a guest against a corporation as the latter can act only through its agents.

We are not considering a statute creating new rights as in *Weber v. Pinyan*, 9 Cal. (2d) 226, 70 P. (2d) 183, 112 A. L. R. 407, but one which has the effect of restricting the common law rule. Furthermore, in the California case, which is strongly relied upon by appellants, no relationship of agency existed between the owner and the operator of the automobile. The car had been loaned to the defendant Pinyan, the driver, and the plaintiff, Mrs. Weber, was his guest. See statement of fact in opinion of the District Court of Appeal, 61 P. (2d) 954. Neither was the owner riding in the car and acquiescing in its operation at the time of the accident.

In *Taylor v. Joyce*, 4 Cal. App. (2d) 612, 41 P. (2d) 967, it was contended that "a guest was not permitted to recover against the owner * * * unless such owner was personally intoxicated or guilty of willful

misconduct," but the court held against this contention saying that the guest statute under consideration should not be given such narrow construction. Also to the same effect, see *Goodwin v. Goodwin*, 5 Cal. App. (2d) 644, 43 P. (2d) 332.

Appellants also rely upon *Posey v. Krogh*, 65 N. D. 490, 259 N. W. 757, but we think it is clearly not in point. The car was "not being operated in the business of the owner" who was the sole defendant therein. Plaintiffs were guests of defendant's brother who was the driver of the car. The owner was not riding in the car at the time of the accident. Neither the relationship of master and servant nor that of principal and agent existed between defendant and her brother.

We think the other assignments of error have been sufficiently covered in the general discussion of the case.

Judgment is affirmed.

---

Petition for rehearing denied February 17, 1942

### ON PETITION FOR REHEARING
(121 P. (2d) 917)

BELT, J. Defendants insist that reversible error was committed by the refusal of the trial court to give the following requested instruction:

"It is the law that when a passenger voluntarily gets into an automobile while the same is being operated by a driver known to the passenger to be intoxicated, such action constitutes contributory negligence. If you find from a preponderance of the evidence that the defendant Harris was intoxicated at the time the car left Waldport for the return journey to Corvallis, and that this fact was known to the plaintiff, then the plaintiff would be guilty of contributory negligence as a matter of law by getting into the automobile."

 In the opinion on original hearing (*Willoughby v. Driscoll and Harris*, 120 P. (2d) 768), no mention was made of the above request as it was believed that the same had been covered by the instruction set forth in the opinion. In the light of counsel's earnest petition for rehearing, and after further consideration, we are inclined to think that the court erred in such assumption. It is fundamental that a guest must exercise due care to avoid injury. Whether plaintiff's conduct constituted negligence must be determined by what a reasonably prudent person would have done under the same circumstances. Ordinarily, this is a question of fact for the jury to decide: *Koski v. Anderson*, 157 Or. 349, 71 P. (2d) 1009; *Pointer v. Osborne*, 158 Or. 573, 76 P. (2d) 1134. As said in *Vidal v. Town of Errol*, 86 N. H. 1, 162 A. 232:

"How much liquor, if any, he had consumed, what its effect upon him was, and how much Miss Vidal knew about these things, were all matters for the jury to pass upon."

 We agree, however, that no ordinarily prudent person would enter an automobile to ride if, at such time, it was known by him that the driver was intoxicated to such an extent that he could not properly drive the car. Under such circumstances, the guest would be assuming the risk of being injured and it could so be declared as a matter of law. It is observed that the above instruction did not include the factor as to the extent of Harris's alleged intoxication and might well be misleading. It is inconsistent with the other instruction requested by defendant, which was given by the court, relative to the issue of contributory negligence. After all, the pertinent inquiry was as to whether Harris was intoxicated to the extent of being

incapable of safely operating the car. It is well known that there are different degrees of intoxication. Appellants recognized such fact in their requested instruction as set forth in the original opinion. For some reason, however, they omitted this factor in the requested instruction upon which error is now assigned.

In *House v. Schmelzer*, 3 Cal. App. (2d) 601, 40 P. (2d) 577—relied upon by appellants in support of requested instruction—the court said:

"While an innocent person is entitled to protection from intoxicated drivers and to redress for injuries caused by them, one who accepts a ride under circumstances which should be a sufficient warning to any reasonable person that the driver is not in a fit condition to operate his car has no just cause for complaint when the law leaves him where he finds himself."

In *Schneider v. Brecht*, 6 Cal. App. (2d) 379, 44 P. (2d) 662—cited by appellants—the court found, as stated in *Erickson v. Vogt*, 27 Cal. App. (2d) 77, 80 P. (2d) 533:

"* * * that the plaintiff, when she entered the automobile, knew of the defendant's intoxicated condition, and knew that the defendant's intoxication had reached such an extent that the defendant was incapable of careful driving."

In *Lindemann v. San Joaquin Cotton Oil Co.*, 5 Cal. App. (2d) 480, 55 P. (2d) 870, it was said:

"The question upon which liability depends is whether the plaintiff knew, or should have known, that defendant Ewing was not in a fit condition to drive his car on the occasion of the accident."

Also see *Winston's Adm'r v. City of Henderson*, 179 Ky. 220, 200 S. W. 330, L. R. A. 1918C, 646; *Whitney*

*v. Penick,* 281 Ky. 474, 136 S. W. (2d) 570; *Toppass v. Perkins, Adm'x,* 268 Ky. 186, 104 S. W. (2d) 423; *Mann v. Harman,* 62 Ga. App. 231, 8 S. E. (2d) 549; *Jensen v. Chicago M. & St. P. Ry. Co.,* 133 Wash. 208, 233 P. 635, wherein it was held that to preclude recovery by reason of contributory negligence it must be shown that the plaintiff knew, or ought to have known, that the driver was so intoxicated as to be in no condition to drive an automobile safely.

We are not unmindful of the general statement in *Hartley v. Berg,* 145 Or. 44, 25 P. (2d) 932:

"* * * a guest who rides in an automobile knowing that the driver is intoxicated is guilty of such contributory negligence as to preclude recovery for any injury sustained by reason of such intoxication."

An examination of the record in that case shows by defendant's requested instructions that he recognized the importance of proving that the guest knew the driver was intoxicated to the extent of being incapable of driving safely. In view of the special verdict rendered by the jury that defendant Berg was not intoxicated at the time and place of the accident, we think it clear that it was not intended, as said in *Bracht v. Palace Laundry Co.,* 156 Or. 151, 65 P. (2d) 1039, that such general language should be used by trial courts thereafter in their instructions in all similar cases. We conclude that no error was committed in rejecting the requested instruction.

██ Defendants also complain of the refusal of the court to give the following instruction:

"That evidence is deemed satisfactory which ordinarily produces moral certainty or conviction in an unprejudiced mind. Such evidence alone will justify a verdict. Evidence less than this is denominated insufficient evidence."

While the court gave the usual instructions concerning the burden of proof and those directing that negligence must be established by a preponderance of the evidence, we agree that this requested instruction should have been given: *Gwin v. Crawford,* 164 Or. 215, 100 P. (2d) 1012. However, we think failure to do so did not constitute reversible error. In *Gwin v. Crawford,* supra, several errors were committed—including the refusal to give the above instruction—and the judgment was reversed. If the only error committed had been the refusal to give this instruction, it is very doubtful whether the same would have been considered sufficient cause for reversal of the judgment.

Viewing the record in its entirety, we are convinced that the cause was fully and fairly submitted to the jury and see no good reason for disturbing its verdict.