Argued May 20, affirmed June 24, petition for rehearing
denied August 12, 1953

# BURROWS *v.* NASH

259 P. 2d 107

*Theodore B. Jensen* argued the cause for appellant and cross-respondent. On the briefs were Davis, Herbring, Jensen & Martin, of Portland.

*Arno H. Denecke,* of Portland, argued the cause for respondents and cross-appellants. With him on the brief were Wilbur, Mautz, Souther & Spaulding, of Portland.

Before LATOURETTE, Chief Justice, and WARNER, ROSSMAN, LUSK, TOOZE and PERRY, Justices.

TOOZE, J.

This is an action for damages for personal injuries, arising out of an automobile accident, brought by June Burrows, a minor, by her guardian ad litem, as plaintiff, against Daren B. Nash and Kenneth W. Nash, and others, as defendants. A judgment of involuntary nonsuit was entered in favor of all defendants except the defendants Nash. The trial resulted in a verdict and judgment in favor of plaintiff and against the defendants Nash in the total sum of $11,500.

The defendants moved the court for an order setting aside the verdict and judgment and for judgment notwithstanding the verdict in their favor or, if such motion be denied, for a new trial. The trial court denied the motion for judgment notwithstanding the verdict but allowed the motion for a new trial. Plaintiff appeals from the order allowing a new trial; defendants cross-appeal from the order denying their motion for judgment notwithstanding the verdict.

Plaintiff was injured at approximately 1:00 a.m. on January 1, 1949, while riding as a guest passenger in a 1940 Chrysler sedan automobile owned and main-

tained by defendant Kenneth W. Nash as a family-purpose car and being then operated and driven by his son and a member of his family; viz., defendant Daren B. Nash.

As against these defendants, this action is brought pursuant to the provisions of § 115-1001, OCLA, generally known as the "guest statute". Plaintiff charged defendants with gross negligence and a reckless disregard of her rights in four particulars: (1) failure to maintain a proper lookout; (2) excessive speed; (3) failure to maintain proper control; and (4) operating said automobile without wearing adequate glasses, knowing the driver's vision to be impaired.

At the time of the accident plaintiff was 17 years of age, and defendant Daren B. Nash was 21 years of age. One Helen Heath, a friend of plaintiff, arranged a date between plaintiff and Daren B. Nash on the night of the accident (they had not met before), while she had a date with one Roland Plath. Plaintiff rode in the front seat of the automobile, while Helen Heath and Roland Plath rode in the back seat.

The accident occurred on McLoughlin boulevard at a point about three-quarters of a mile north of the city limits of Milwaukie in Clackamas county, Oregon, and about one-fourth of a mile south of the city limits of Portland.

McLoughlin boulevard between Milwaukie and Portland is a paved four-lane through arterial highway about one mile in distance and is a straight, level stretch of road. The lanes for traffic are marked by yellow lines painted on the pavement, and between the north and south traffic lanes there is a center dividing strip, about three feet in width, with raised concrete cleats. Each traffic lane is approximately eleven feet

118

wide, and there are graveled shoulders on each side of the road, also about eleven feet in width.

This straight stretch of roadway, running in a general northerly and southerly direction, is unbroken except for one intersection, known as the Kellogg Park intersection ("A" avenue), which is located about three-fourths of a mile north of Milwaukie. Traffic at said intersection is controlled by electrically-operated traffic signals, with a signal hanging over the center of the road and with signals on the east and west shoulders. These signals show red, green and amber lights to traffic proceeding on McLoughlin boulevard.

Defendants were operating their automobile in a northerly direction upon said highway from Milwaukie toward Portland when the accident happened. Along the east side of this stretch of highway, and facing northbound traffic, are two official state highway signs, one approximately three-tenths of a mile south of the Kellogg Park intersection stating "Speed 35 Miles" and the other about 450 feet south of said intersection stating "Traffic Signal Ahead".

There are no buildings in close proximity along the shoulders of the road from Milwaukie to the signal lights at the Kellogg Park intersection. It was Saturday night and New Year's Eve, and the traffic moving both ways along the highway was heavy. The night was dark; it was raining; and visibility was poor.

A few minutes prior to the happening of the accident, an automobile driven by one Edward I. Engel had been proceeding north on McLoughlin boulevard; and when it reached a point between the traffic sign reading "Traffic Signal Ahead" and the Kellogg Park intersection, a mechanical failure occurred and it came to a stop on the inside lane for northbound traffic,

about 100 feet south of the intersection. All lights on the Engel car were burning, including two red tail lights (one on each rear fender) and one white light over the rear license plate. Engel and his passenger Hasbrouck got out of the car and walked to the rear thereof to flag approaching traffic. Several north-bound cars passed the stalled Engel vehicle, using the outside traffic lane.

While the Engel car was in this position, defendant Daren B. Nash drove the Chrysler automobile north along McLoughlin boulevard from Milwaukie, using the inside lane, at a rate of speed estimated to be 55 miles per hour. Engel noticed the approach of the Chrysler car as it entered the straightaway just north of Milwaukie. As it came closer, he waved to it in an endeavor to stop it or cause it to be driven into the outside lane, but to no avail. Engel and Hasbrouck were compelled to run to the shoulder of the road as a matter of self-protection. Without any slackening of speed or change of direction, and without any attempt to get into the outside lane, the defendant Daren B. Nash drove the Chrysler headlong, and with great force, into the rear end of the Engel car. That vehicle was knocked forward for a distance of approximately 100 feet to a point about one car length south of the intersection signal light, before it came to a stop with the Chrysler directly behind and jammed into the rear of it. Just before the collision, there were no other cars immediately in front of the Chrysler in the outside lane, nor was the defendant Daren B. Nash in the act of over-taking and passing another vehicle. *The record is wholly silent as to whether the signal lights at the intersection showed "red", "green" or "amber" immediately prior to the accident.*

Defendant Daren B. Nash testified that he did not see any lights on the Engel car prior to the crash, nor did he know of the presence of that vehicle on the highway until his front lights shone on the rear bumper thereof. He was driving the Chrysler with the lights on low beam. He offered no testimony as to the signal lights, but he did testify that he was aware of the presence of the highway warning signs and the nature thereof, though he could not say that he paid any particular attention to them that night.

Defendants' motion for a new trial was based upon a large number of alleged errors committed by the trial court, particularly with reference to certain instructions given to the jury.

■■■ No useful purpose would be served by setting out in detail the grounds of the motion. We have carefully examined all of the courts instructions, giving special attention to those objected to by defendants. To say the least, the instructions were misleading and confusing, and some of those to the giving of which defendants excepted were clearly erroneous and prejudicial. For example, the court told the jury:

> "I instruct you however that prima facie as such term is here used in these instructions, means, that if plaintiff's evidence sufficiently establishes to your satisfaction that the defendant Daren B. Nash, did operate said Chrysler sedan at a speed in excess of thirty-five miles per hour, such evidence, if not refuted, will be conclusive that the defendant was guilty of gross negligence. * * *"

Traveling in excess of a "designated speed" is not necessarily a violation of the law. It becomes so only when, while so traveling, the basic rule as to speed is violated; that is to say, it is the violation of the basic rule as to speed, and not merely traveling in excess

of a designated speed, that is unlawful. Moreover, a violation of the basic rule does not, in and of itself, constitute gross negligence, although it does constitute ordinary negligence as a matter of law. Combined with other conditions, a violation of the basic rule may be considered upon the question of gross negligence; but it certainly would be an unusual case, indeed, where speed, in and of itself, would constitute gross negligence within the meaning of the law. Under the statute, traveling in excess of a designated speed is merely prima facie evidence of a violation of the basic rule. Obviously, the above instruction was erroneous. § 115-320(a), (b), OCLA, as amended by ch 458, Oregon Laws 1941; *Rauw v. Huling et al.*, 199 Or 48, 259 P2d 99; *Senkirk v. Royce et al.*, 192 Or 583, 592, 235 P2d 886.

■ It is well established by the decisions of this court that where error has been committed, a motion for a new trial is addressed to the sound discretion of the trial court and will be reviewed only for a manifest abuse of discretion; and it requires a much clearer case or much stronger showing to authorize a reversal of an order granting a new trial than it does to reverse an order overruling a motion therefor. *Clark v. Fazio et al.*, 191 Or 522, 528, 230 P2d 553. The trial court did not err in granting a new trial. This conclusion disposes of the questions raised by plaintiff's appeal.

■ The real problem before us for solution arises upon defendants' cross-appeal from the order of the trial court denying their motion for judgment notwithstanding the verdict. Defendants contend that there is no substantial evidence in the record showing or tending to show gross negligence on their part, nor a reckless disregard by them of the rights of

others, and that it was error to submit the question of their liability to the jury.

In considering this question we must, of course, view the evidence in the case from the standpoint most favorable to the plaintiff. She is entitled to the benefit of every reasonable inference that can be drawn from the evidence in her favor. *Willoughby v. Driscoll,* 168 Or 187, 191, 120 P2d 768, 121 P2d 917.

Section 115-1001, OCLA, known as the "guest statute", provides:

"No person transported by the owner or operator of a motor vehicle as his guest without payment for such transportation shall have a cause of action for damages against such owner or operator for injury, death or loss, in case of accident, unless such accident shall have been intentional on the part of said owner or operator or caused by his gross negligence or intoxication or his reckless disregard of the rights of others."

Plaintiff charges defendants with being guilty of gross negligence and of a reckless disregard of her rights, within the meaning of the foregoing statute.

The term "gross negligence" and the phrase "reckless disregard of the rights of others", as used in the guest statute, have been defined in a number of decisions by this court. In *Turner, Adm'r, v. McCready et al.,* 190 Or 28, 222 P2d 1010, Mr. Justice BRAND reviewed all our prior decisions relating to the guest statute. At page 46 the following statement is made:

"The task of drawing a line of demarcation separating cases in which there is evidence only of ordinary negligence from those in which there is substantial evidence of gross negligence or reckless disregard is one of the most difficult and delicate tasks imposed upon the courts. * * *"

■ As pointed out in the Turner case, it would be and is impossible to adopt a fixed rule that would be applicable to all cases, and the decision in each case must depend upon the particular facts of that particular case. After reviewing our prior decisions, Mr. Justice BRAND, at page 54, stated:

> "In harmonizing, so far as possible, the actual rulings on the facts in cases from this jurisdiction, it seems clear that under some circumstances the facts may present a jury question on the issue of gross negligence, although there is no *direct* evidence of a reckless state of mind manifested by warning given and ignored. While undue speed, alone, or driving on the wrong side of the road, alone, or knowledge of conditions rendering such driving extremely hazardous, alone, may not constitute gross negligence or reckless disregard, *yet, a combination of these elements in a given case may present a jury question.* The element of recklessness may, under some circumstances, be inferred from evidence of the driver's conduct in the light of conditions *and of what he must have known.* * * *" (Italics ours.)

As we said in *La Vigne v. La Vigne,* 176 Or 634, 641, 158 P2d 557: "* * * The difficulty lies not in the statement of the law, but rather in its application to the particular factual situation involved. * * *"

As separate charges of negligence, those set forth in the complaint allege ordinary negligence as distinguished from gross negligence; but, as heretofore pointed out by this court, a combination of several acts of ordinary negligence might, under the circumstances of the case, constitute gross negligence. *Glascock v. Anderson,* 198 Or 499, 257 P2d 617; *Keefer v. Givens,* 191 Or 611, 620, 232 P2d 808; *Turner, Adm'r, v. McCready et al.,* supra.

■ Applying the law of this state to the facts in the instant case, we are of the opinion that a jury question was presented as to the alleged gross negligence of defendants.

It was a dark and stormy night; visibility was poor; and because it was not only Saturday night but also New Year's Eve, traffic along the highway in both directions was heavy. The designated speed was 35 miles per hour. The outer lane for northbound traffic, being the lane usually used except when overtaking and passing a slower-moving vehicle, was open and unobstructed. Defendants were approaching an intersection controlled by traffic lights and knew, if the light was red, they would be compelled to stop. They also might well anticipate that other cars ahead of them would be required to stop for a red light. The Engel car was ahead of them in the same lane of traffic with its rear lights burning, which must have been visible to defendants had they been giving any attention at all to driving. Moreover, two men were on the highway waving to defendants to stop or slow down. Insofar as the collision was concerned, it is obvious that it was immaterial that the Engel car was stopped 100 feet south of the intersection or that it was stopped instead of being in slow motion. Under all the circumstances of this case, a jury might well find that defendants were guilty of far more than ordinary negligence in plunging ahead without seeing what they could and should have seen, without heeding the traffic signs, slowing the speed of their vehicle or swerving to avoid a collision, and driving directly into the rear end of the Engel automobile while traveling at a rate of speed of 55 miles per hour and at a time when they were but 100 feet away from the intersection and the traffic lights.

From the evidence in this case, a jury might properly infer that defendants were maintaining no lookout at all; that they were traveling at a rate of speed which was highly excessive and dangerous under all the conditions then obtaining; and that they made no attempt to control their car. This combination of several acts of negligence, in the light of all the facts of the case, might well indicate to a jury "a mind indifferent to the rights of others, or having those rash qualities exhibited by the foolhardy, or having an 'I don't care what happens' attitude."

The record offers no explanation or excuse for the acts of defendants. Had the traffic light at the intersection been green as defendants approached and had defendants seen it and acted on the assumption of a clear road ahead, that might possibly have explained their failure to slow down; but insofar as the record shows, defendants did not even observe those lights.

The trial court did not err in denying defendants' motion for judgment notwithstanding the verdict. A jury question was presented by the evidence.

██ Inasmuch as this case must be remanded to the trial court for another trial, there is one other matter presented on this appeal that should be noted so that error on the next trial will not result on account thereof.

As observed at the outset, one of plaintiff's charges of negligence related to the absence of eyeglasses. That specification of negligence is: "Said defendants, with knowledge of the fact that their vision was impaired, operated their said automobile without wearing adequate eye glasses."

Defendants contend that there was no competent evidence in the record sufficient to submit this specifi-

cation of negligence to the jury. They admitted that the eyesight of Daren B. Nash was defective and that he was required to wear eyeglasses. Plaintiff contended that said defendant was not wearing his glasses immediately prior to and at the time of the accident.

Upon the trial, Engel and Hasbrouck testified that immediately following the accident, the defendant Daren B. Nash got out of the Chrysler car and engaged in discussion with them. They said that he was not then wearing his glasses; and when asked to sign a paper, he stated that he would have to get his glasses in order to see properly. They testified that Nash went to his automobile and then returned, wearing his glasses. Upon that testimony, and that alone, plaintiff bases her claim that Daren B. Nash was not wearing his glasses at the time of the collision.

Plath, who rode in the back seat of the Nash car, testified that Daren had his glasses on prior to the accident, although the only time he particularly noticed that fact was apparently some 15 minutes before the mishap. Daren testified positively that he was wearing his glasses when the accident occurred. He said they were knocked off as the result of the collision; and when he returned to the car to get them, he found them, with the aid of a flashlight, under the front seat of the car. Plaintiff did not testify at all regarding the glasses.

Defendants moved the court to strike the testimony of Engel and Hasbrouck respecting the eyeglasses, but the motion was denied. Defendants also made a timely request to have the specification of negligence as to eyeglasses taken from the jury's consideration. This request also was denied.

The testimony of Engel and Hasbrouck was not competent to establish the specification of negligence

in question. It should have been stricken. Inasmuch as this was the only evidence offered for the purpose of establishing plaintiff's charge of negligence, the request of defendants that that specification of negligence be taken from the jury should have been allowed.

In 20 Am Jur, Evidence, 208, § 210, the rule is stated:

> "The presumption of the continued existence of a person, a personal relation, or a state of things is prospective, and not retrospective. Such a presumption never runs backwards; the law does not presume, from proof of the existence of present conditions or facts, that the same facts or conditions had existed for any length of time previously. * * *"

It must be kept in mind that immediately before the time Engel and Hasbrouck observed Daren B. Nash without his eyeglasses, defendant had been involved in a collision between two automobiles, an event not at all unlikely to cause one to lose his glasses. An inference that Daren was not wearing his glasses while driving his car at the time of the accident, from the mere fact that after the accident and when outside the car he was not wearing them, would be purely speculative and conjectural. No such speculation is permitted a jury in arriving at a verdict. Much more so is that true in this case, in the light of positive testimony otherwise.

The judgment is affirmed, and this cause is remanded for a new trial.