Argued September 13, reversed September 26, 1951

# SENKIRIK *v.* ROYCE ET AL.

### 235 P. 2d 886

584

*H. H. Phillips*, of Portland, argued the cause for appellants. With him on the brief were Griffith, Peck, Phillips & Coughlin, and Norman L. Easley, of Portland.

*W. A. Franklin* argued the cause for respondent. On the brief were Anderson & Franklin, of Portland.

Before HAY, Acting Chief Justice, and LUSK, LATOURETTE, WARNER and TOOZE, Justices.

TOOZE, J.

This is an action for damages for personal injuries claimed to have been suffered as the result of the negligent operation of a taxicab, brought by Louis Senkirik, as plaintiff, against Ezra Royce, Isabell Royce, and Dora Royce, d.b.a. Yellow Cab Company, as defendants. The trial resulted in a verdict and judgment in favor of plaintiff in the total sum of $9,000. Defendants appeal.

At the time and place of the accident involved herein a taxicab owned by defendants was being operated by their employe, one Robert G. Carlton, upon the business of defendants.

The accident occurred about 5:30 p.m. on November 28, 1948, at or near the intersection of Northeast Williams avenue and Northeast Holladay street in the

city of Portland, Oregon. Northeast Williams avenue is a four-lane, through highway running in a general northerly and southerly direction and one of the principal thoroughfares for vehicular traffic between downtown Portland and the north and northeast sections of said city. Northeast Holladay street runs in a general easterly and westerly direction and intersects Northeast Williams avenue. There are no marked crosswalks at this intersection. At the southwest corner of the intersection there is located a beer tavern known as "Handy Corner," with its main entrance fronting on Northeast Holladay street. At the time of trial it was stipulated between the parties that this intersection lies within what is known as a "residential district" as defined by statute. § 115-301 (y), O.C.L.A., as amended by ch. 279, Oregon Laws 1947.

A few minutes prior to the accident the plaintiff, a pedestrian, had gone to the Handy Corner to purchase a quart bottle of beer. While there, he drank one glass of beer. He then left the tavern and stepped to the southwest corner of the intersection, preparatory to proceeding easterly across Northeast Williams avenue. At the time there was a heavy traffic by motor vehicles along said avenue, most of them proceeding in a northerly direction, as is usual at that period of the day. If not raining at the time, it had been shortly before, and the pavement was wet. It was dark enough to require traveling motor vehicles to have the front lights burning. Plaintiff was dressed in dark clothing.

Because of the heavy traffic along said avenue, particularly from the south, plaintiff was compelled to pause for awhile to permit the traffic to clear the intersection so that he might proceed safely across.

Before stepping off the sidewalk to cross the avenue, plaintiff states that he looked both to the north and south and did not start until it appeared to him that he had ample time to make the crossing in safety. He testified that when he started to cross, he saw the taxicab coming from the north, and that it was then about a block and a half away. He noticed the taxicab again when it was a block away and stated that at the time he thought there was sufficient room for the taxicab to pass behind him and gave his attention to the south.

The taxicab was being operated in a southerly direction along said avenue in the left-hand lane for south-bound traffic, that is, in the lane of travel next to the center line of the highway. There is a dispute in the evidence as to the speed at which the taxicab was being operated, the estimates varying from 25 to 40 miles per hour. At or near the south boundary line of the intersection the taxicab struck plaintiff, who was then at approximately the center of the avenue, throwing him several feet and to the pavement with great force, then proceeding for some distance before stopping. The taxicab left rear-wheel skid marks of approximately 54 feet in length and front-wheel marks of approximately 61 feet in length. The driver of the taxicab testified that he did not see plaintiff until just before striking him, and that, immediately after he saw him, he set the brakes on his vehicle. Plaintiff was seriously injured as the result of the accident.

There is a sharp dispute in the testimony as to whether plaintiff at the time of the accident was walking (or had stopped) within that part of the intersection defined as the crosswalk. He contended that he was crossing within the boundaries of the crosswalk. On

the other hand, defendants produced testimony by eyewitnesses, including the driver of the taxicab, that at the time plaintiff was at a point from 10 to 20 feet south of the south boundary line of the crosswalk. This dispute formed the principal issue of the case, involving, as it did, the question of statutory right of way.

We do not assume to give a complete statement of the facts in the case, but the foregoing is sufficient for the purposes of this opinion.

In his complaint plaintiff charged defendants with negligence in the following particulars:

"(1) In driving and operating their motor vehicle at an excessive and dangerous rate of speed under the conditions then and there existing; (2) in neglecting and failing to keep a proper or any look out for pedestrians using said streets, and in particular this plaintiff; (3) in failing and neglecting to keep their motor vehicle under proper or any control; (4) in failing to stop, swerve or otherwise avoid colliding with plaintiff; (5) in failing to yield the right of way to plaintiff."

In their answer defendants specifically denied the several acts of negligence charged against them and after affirmatively alleging the adoption of Ordinance No. 75607, known as the Traffic Code of the city of Portland, by the city council of said city on July 10, 1941, charged plaintiff with negligence as follows:

"(a) He failed to keep or maintain a proper or any lookout for his own safety;

"(b) He was crossing Williams Avenue at a place other than a marked or unmarked crosswalk;

"(c) He stepped from a place of safety into a place of danger;

"(d) He failed to yield the right of way to defendants' automobile."

Plaintiff replied, denying all the allegations of new matter contained in the answer inconsistent with or contradictory to the allegations of his complaint.

The several assignments of error have to do with certain instructions given by the court to the jury, and with the failure of the court to give certain other instructions requested by defendants.

■ As their first assignment of error defendants contend the trial court erred in giving the following instruction:

"And I further instruct you that if you find from the evidence that the defendants did at the time and place of the accident, acting by and through their driver of said taxicab, Mr. Carlton, *operate said taxicab,* which collided with the plaintiff, *at a speed in excess of twenty-five miles per hour, then you would be justified in finding as to this charge that the defendants were negligent,* and that such act of negligence was in itself prima facie evidence that they were operating said taxicab at said time in excess of the indicated speed." (Italics ours.)

An exception was duly taken to the giving of this instruction.

Section 115-320 (b), O.C.L.A., as amended by ch. 458, Oregon Laws 1941, in part provides as follows:

"(b) Any person who drives a vehicle upon a highway at a speed in excess of that designated by this act or by the state highway commission or the state speed control board, pursuant to the provisions of this act for the particular district or location, *and who, while so driving, violates the basic rule set forth in subdivision (a)* or any pro-

vision of sections 115-327 to 115-352, both inclusive, shall, upon conviction, be punished * * * *provided, that any speed in excess of said designated speeds shall be prima facie evidence of a violation of subsection (a) of this section.* (Italics ours.)

"Said designated speeds are as follows:
" * * *

"2. Twenty-five miles per hour:

"a. In any residence district as defined herein, or * * *.""

The basic rule referred to above as being contained in subdivision (a) reads as follows:

"No person shall drive a vehicle upon a highway at a speed greater than is reasonable and prudent, having due regard to the traffic, surface and width of the highway and the hazard at intersections and any other conditions then existing.

"Nor shall any person drive at a speed which is greater than will permit the driver to exercise proper control of the vehicle and to decrease speed or to stop as may be necessary to avoid colliding with any person, vehicle or other conveyance on [or] entering the highway in compliance with legal requirements and with the duty of drivers and other persons using the highway to exercise due care * * *.""

In taking their exception to the foregoing instruction, defendants stated:

"The defendants further except to the Court's instructing the jury regarding a violation of the designated speed being prima facie negligence upon the part of the defendants without calling the jury's attention to the fact that that is negligence only in the absence of evidence that such speed was in fact reasonable. And I think that is a very important part of that instruction, and it was omitted by the court, *which would lead the jury to believe that if they find the speed over the designated speed*

—that is, the speed of the cab over the designated speed, *that automatically they can find negligence upon the part of the defendant on that score.*" (Italics ours.)

Manifestly, the part of the charge above emphasized is an erroneous statement of the law. Under the express provisions of the statute, traveling in excess of the indicated speed is a violation of the law only if, in so doing, the traveler violates the basic rule. The statute simply provides that exceeding the designated speed is prima facie evidence of the violation of such rule, but in every case, before a jury would be justified in finding one guilty of negligence on account of such speed, it would be necessary for it first to find that the basic rule had in fact been violated by reason thereof. Here, the jury was instructed that speed in excess of 25 miles per hour in and of itself constituted negligence, whereas, at most, it could only be taken as prima facie evidence of such negligence, subject to being overcome by other evidence. There is a vast difference between an act in and of itself constituting negligence, or being merely prima facie evidence of negligence. The statute simply provides a rule of evidence.

Under the statutes of this state (with certain exceptions unnecessary to mention here) there are no "speed limits" as such, traveling in excess of which will, in and of itself, constitute a violation of law. Speed of motor vehicles is regulated entirely by the provisions of the basic rule. Obviously, indicated speeds are not "speed limits," as was indicated in the court's questioned instruction.

The last few lines of the instruction are most confusing. In effect, it is stated that "a violation of the

indicated speed is prima facie evidence of a violation of the indicated speed." That doesn't mean anything.

■■ In all cases where applicable the court may and, if requested, should instruct the jury respecting indicated speeds in accordance with the provisions of the statute and, in so doing, should also explain what is meant by prima facie evidence. It is noted that in the instant case there was no such explanation, but no exception was taken on account thereof; therefore, the question is not before us. *Mercer v. Risberg,* 182 Or. 526, 188 P. 2d 632.

We have given careful attention to the entire charge of the court to the jury and do not find anything therein that would correct the error above noted.

■ Defendants also contend the trial court erred in refusing their request to take from the jury the question of permanent injury.

We have examined the testimony with respect to plaintiff's injuries. We note the fact that plaintiff's attending physician, upon whose testimony, to the effect that he "thought" plaintiff would fully recover from his injuries, defendants place their principal reliance in support of their contention, testified that he had not seen plaintiff during a period of approximately three months immediately prior to the trial. There was testimony at the time of trial that plaintiff still suffered severe pain and swelling in his injured leg. His leg and the scar thereon, caused by the compound fracture which he suffered, and showing swelling, were exhibited to the jury. The accident occurred, as we have before observed, on November 28, 1948. The trial commenced and plaintiff testified on March 2, 1950. Many X-rays showing plaintiff's injuries were admitted in evidence. In the light

of the entire record, we are of the opinion there was sufficient evidence justifying submission to the jury of the question respecting the permanence of plaintiff's injuries, and that there is no merit in defendants' contention in this regard.

■■ As their third assignment of error defendants maintain that the trial court erred in refusing to give the following instruction requested by them:

"You are instructed that a driver of a motor vehicle upon the highways of this state, including the streets of the City of Portland, may assume that other users of the highways will obey the law until such time as he has had notice to the contrary or, in the exercise of reasonable care, should have had notice to the contrary."

Defendants excepted to the court's failure to give this instruction, in connection therewith stating:

"The point of this exception, your Honor, is this: That both sides had the right to assume that the other would observe the provisions of the law, and there is law governing pedestrians as well as motor vehicles and, therefore, applying this general principle of law merely in favor of plaintiff unduly prejudiced the defense of the case. In other words, we had the right also to assume that the plaintiff would observe the law. And that is a very vital factor in this case so far as we are concerned, your Honor."

"THE COURT: Well, I may have overlooked that as far as defendants were concerned, and that being true, I will call the jury in and instruct them that rule also applies in considering whether or not the defendants were negligent."

However, the court did not call the jury back and give this or any other instruction, nor had it covered the matter by any instructions it did give.

The requested instruction was a proper statement of the law. *Walker v. Penner,* 190 Or. 542, 227 P. 2d 316; *Johnson v. Updegrave,* 186 Or. 196, 206 P. 2d 91; *Peters v. Johnson et al.,* 124 Or. 237, 264 P. 459. And it should have been given, particularly so because the court did give such an instruction respecting the plaintiff. The failure of the court to give such instruction constituted error. *Spence, Adm'x, v. Rasmussen et al.,* 190 Or. 662, 688, 226 P. 2d 819.

As their assignment of error numbered four, defendants contend the court erred in giving repetitious instructions respecting the right of way between plaintiff and defendants, and that the instructions as given prejudiced defendants. We agree that the instructions upon this issue were to some extent repetitious, but we do not believe the giving thereof constitutes error. It is unnecessary to encumber the record by quoting these. Upon another trial such repetition may and should be avoided.

■■ Defendants next contend the court erred in refusing to give the following requested instruction:

"You are instructed that it was the duty of plaintiff to keep and maintain a proper lookout for his own safety, and if you find that he failed to keep and maintain a reasonable lookout for his own safety, then he was negligent, and if such negligence, if any, on the part of plaintiff, contributed in the slightest degree to the proximate cause of the accident, your verdict must be in favor of defendants."

It will be recalled that one of the specifications of negligence charged by defendants against plaintiff was that he had failed to maintain a proper lookout. The above instruction correctly states the law and was applicable to a material issue of the case. It should

have been given. *Sherrard v. Werline,* 162 Or. 135, 91 P. 2d 344; *Cerrano v. Portland Ry. L. & P. Co.,* 62 Or. 421, 427, 126 P. 37.

The court instructed the jury specifically respecting each charge of negligence made by plaintiff against defendants, including that regarding lookout. As to lookout, the court said:

> "Now, there is the further charge, ladies and gentlemen, that the defendants failed to keep a proper lookout. As to this charge I instruct you that the degree of alertness to be exercised by the driver of a motor vehicle upon a public thoroughfare—and I again instruct you that an intersection is a public thoroughfare—should be commensurate with the dangers, if any, which were apparent or which were reasonably to be apprehended. This does not mean that the driver of a motor vehicle should have looked continuously at any particular place or continuously in any particular direction, for the law does not establish an arbitrary standard in such matters, but only requires that he maintain such a lookout for the safety of others as would have been maintained by a reasonably prudent person under the same or similar circumstances and conditions as existed at the time and place of the accident with which we are here concerned.  * * * and if you find the defendants, acting through their operator of said taxicab, failed to exercise such degree of care, then you would have to find that as to this charge of negligence that the defendants were in fact negligent."

■ Plaintiff maintains that, in considering whether error was committed by the trial court in failing to give the requested instruction in question, the court's entire charge to the jury must be considered, and if the subject matter of the requested instruction has been adequately covered by the court's own instruc-

tions, no error has been committed. We agree with this contention. This court has so stated in many decisions which it is unnecessary to cite.

■ The question is whether the trial court actually did cover the matter contained in this specific request of defendants. Plaintiff contends that it did and invites our attention to certain portions of the instructions given the jury. Plaintiff states in his brief:

"The court instructed the jury as to what the statute provided with reference to right of way, and then instructed the jury as follows:

" 'This provision of the motor vehicle law, however, does not relieve either the driver of a motor vehicle or a pedestrian from the duty to exercise due care. In other words, both, irrespective of the question as to which had the right of way, must exercise due care and caution for their own safety, as well as for the safety of others.'

"Further along in the course of the Court's charge to the jury, it instructed as follows:

" 'And in this connection I further instruct you that the motor vehicle law of this state, giving a pedestrian in a cross-walk the right of way as against an approaching motor vehicle, does not relieve the pedestrian from the duty of exercising due and reasonable care for his or her own safety— that is, that degree of care which would have been exercised by a reasonably prudent person similarly situated.'

"One of the allegations of negligence of the defendants' answer was to the effect that plaintiff failed to keep a proper look-out for his own safety.

"Again the Court instructed:

" ' * * * if, after having carefully considered the evidence in this case in the light of the instructions just given you, you should find that the plaintiff was negligent in any one or more of the respects alleged in defendants' answer and you further

find that such negligent act or acts on the part of plaintiff, or any one or more of them in combination, directly and proximately contributed to the happening of the accident and resultant injuries of which plaintiff complains, even though slightly, then your verdict would have to be for the defendants.' ''

The foregoing excerpts from the court's instructions fall far short of covering the matter contained in defendants' request. Where do we find any specific direction to the jury that plaintiff, like the motor vehicle operator, was required to maintain a *lookout?* Certainly, the matter is not specifically covered by the general language used in the last instruction above quoted. If that type of instruction suffices in negligence cases where the request for a specific instruction material to the issues is made, then it follows that in every such case the law would be satisfied by the court simply calling attention to the charges and countercharges contained in the pleadings, without defining the respective duties of the parties. That would indeed be a dangerous practice; it would at once plunge the jury into the field of pure speculation. We cannot subscribe to any such proposition. It was error for the court not to give the requested instruction.

Finally, defendants assign as error the refusal of the court to give the following requested instruction:

''If you find under the facts of this case that at the time of the accident plaintiff was attempting to cross the street at a place other than at an intersection or a marked cross-walk, then he was negligent as a matter of law, and if such negligence, if any, contributed in the slightest degree to the proximate cause of the accident, your verdict must be in favor of defendants.''

■ On July 10, 1941, the city of Portland adopted § 19-1201 (e) of Ordinance No. 75607, which provides as follows:

"It shall be unlawful for any person to cross or attempt to cross any street or highway within the City of Portland between intersections or at any other place than at an intersection or a marked crosswalk."

Section 115-340, O.C.L.A., as amended by § 8 (5) of ch. 428, Oregon Laws 1941, provided as follows:

"5. Every pedestrian crossing a roadway at any point other than within a marked or unmarked crosswalk shall yield the right of way to vehicles upon the roadway. *Local authorities in their respective jurisdictions shall have authority to prohibit by ordinance any pedestrian crossing any street or highway at any place other than at a marked or unmarked crosswalk."* (Italics ours.)

Section 115-340, O.C.L.A., was again amended by ch. 407, Oregon Laws 1947, but no change was made in the foregoing provision contained in § 8 (5) of the act of 1941.

Under the authority conferred by § 115-340, O.C. L.A., as amended, the city of Portland had the power to adopt the provision of Ordinance No. 75607 hereinabove quoted.

■ In the instant case defendants seriously contended that plaintiff at the time of and immediately preceding the accident was walking (or had stopped) near the center of Northeast Williams avenue at a point several feet south of the unmarked crosswalk. If that is the fact, then plaintiff was guilty of a violation of the ordinance in question. Such a violation constitutes negligence per se. If such negligence on the part of plaintiff contributed proximately to the happening of

the accident, even though slightly, it would bar his recovery. Defendants were entitled to have their theory of the case submitted to the jury, and it was error for the court to refuse the requested instruction.

At no place in its instructions did the court tell the jury that it was unlawful for a pedestrian to cross a street at any point other than an intersection, or that such a crossing outside an intersection would constitute negligence as a matter of law. This sort of instruction was important to the defense in this case, particularly so in the light of the following instruction which the court did give:

> "And if the evidence shows that plaintiff, in the exercise of due care was attempting to cross at a point other than a marked or unmarked crosswalk and was hit by defendants' automobile as a proximate result of defendants' failure to exercise due care, then as to this charge of negligence, you would have to find that the defendants were negligent."

■ We have repeatedly held that a right of way is not absolute, and that having the right of way does not relieve one from the duty of using due care in the exercise of such right. This rule applies to both pedestrians and motor vehicle operators.

However, if plaintiff was crossing the street at a point other than within the boundaries of a marked or unmarked crosswalk, he was not exercising due care as a matter of law; he was negligent. Obviously, one cannot be in the exercise of due care and negligent at one and the same time. It is noted that the last clear chance doctrine was not invoked in this case.

It is manifest that the errors committed were prejudicial to defendants. Judgment reversed.