Argued April 1, affirmed May 20, 1953

# GLASCOCK *v.* ANDERSON

257 P. 2d 617 .

Thomas B. Gabriel and Norman K. Winslow, of Salem, argued the cause and filed a brief for appellant.

Thomas H. Tongue, III, argued the cause for respondent. On the brief were Hicks, Davis & Tongue, of Portland.

Before LATOURETTE, Chief Justice, and WARNER, BRAND, TOOZE and PERRY, Justices.

TOOZE, J.

This is an action for damages for personal injuries brought pursuant to the provisions of § 115-1001, OCLA, generally known as "the guest statute". It was commenced by Marvin Glascock, as plaintiff, against Floyd Anderson, as defendant. The trial resulted in a verdict and judgment in favor of plaintiff in the total sum of $11,196; defendant appeals.

State highway No. 38 is a public highway located in Douglas county, Oregon, and runs in a general easterly and westerly direction between the cities of Reedsport and Drain, passing through the town of Scottsburg. The highway at the point with which we are concerned is 18 to 20 feet in width, with narrow shoulders on each side, and consists of black-top pavement. The accident out of which this litigation arose

occurred on said highway about three miles west of Scottsburg. All the way from Scottsburg to the scene of the accident, the highway is crooked, with one curve after another. All approaches to curves are marked with standard state highway curve-warning signs, including the curve where the accident took place.

On November 20, 1948, at about the hour of 1:00 o'clock a.m., plaintiff was riding as a guest in the back seat of a Buick automobile owned and then being operated by defendant. The car was proceeding in a westerly direction along said highway, enroute from Scottsburg to Echo auto court, about seven miles west of Scottsburg. It was a dark night, with heavy rainfall. The pavement was "slick". Plaintiff sat on the left side of the rear seat directly behind the driver, while one Loren Leathers sat beside him on the right side, and Ralph Anderson, a brother of defendant, sat in the front seat on the right side. Defendant was driving his automobile at a speed estimated to be between 40 and 50 miles per hour.

About three miles westerly from Scottsburg, the automobile approached a left-hand curve in the highway. The defendant saw the highway curve-warning sign, but did not decrease the speed of his car. Just before entering the curve, defendant took his eyes off the road to the front, turned his head, and looked to the rear of the car. The automobile failed to negotiate the turn in the road, ran onto the shoulder of the highway, plunged down a steep bank, rolled across boulders and other debris, and came to rest upside down on a flat approximately 180 feet from the point where it left the highway. The car was completely demolished. Broken parts of the automobile were found all along its line of travel after it left the highway. Both plaintiff and defendant were rendered unconscious as a

result of the accident. Plaintiff suffered severe and permanent injuries.

This action was brought under the provisions of § 115-1001, OCLA, generally known as "the guest statute", which provides:

"No person transported by the owner or operator of a motor vehicle as his guest without payment for such transportation shall have a cause of action for damages against such owner or operator for injury, death or loss, in case of accident, unless such accident shall have been intentional on the part of said owner or operator or caused by his gross negligence or intoxication or his reckless disregard of the rights of others."

Plaintiff, in his amended complaint, alleged that defendant operated his automobile "at a grossly high, dangerous and reckless rate of speed, and in a grossly careless and negligent manner", and that defendant was guilty of the following acts of gross negligence:

"1. In operating his said automobile at a high, reckless and dangerous rate of speed, which speed was greater than was reasonable or prudent under the circumstances and conditions then and there existing, having due regard to the traffic, surface and width of said highway, and the hazards and dangers then and there existing;

"2. Defendant failed and neglected to have his said automobile under proper or any control so that he could keep the same on the main traveled portion of the highway;

"3. Defendant failed and neglected to keep a proper or any lookout in order to ascertain the curves and conditions on said highway;

"4. *Defendant had consumed an excessive amount of alcoholic beverages prior to said accident, and at the time of said accident was intoxicated therefrom to the extent that he was unable,*

*physically or mentally, to safely and properly drive and operate his automobile.''* (Italics ours.)

Defendant's answer consists of a general denial.

Upon conclusion of the trial, defendant moved the court for a directed verdict in his favor, upon the ground that the evidence was insufficient, as a matter of law, to establish either (1) gross negligence, within the meaning of the statute, or (2) intoxication of defendant. The trial court denied the motion. Defendant assigns the ruling of the trial court as error.

The question is, therefore, presented on this appeal whether there is substantial evidence in the record sufficient to submit to the jury the question of whether defendant was guilty of gross negligence at the time and place of the accident, or whether he was intoxicated at that time and place, or whether, as a matter of law, the evidence fails to present a jury question.

■ It is well settled in this state that in considering these questions, the evidence in the case must be viewed from the standpoint most favorable to plaintiff. He is entitled to the benefit of every reasonable inference that can be drawn from the evidence in his favor. *Willoughby v. Driscoll,* 168 Or 187, 191, 120 P2d 768, 121 P2d 917.

■ ''Gross negligence'', as used in the guest statute has been defined in a number of decisions by this court. It is unnecessary to redefine the term. The leading case upon the subject is perhaps that of *Rauch v. Stecklein,* 142 Or 286, 293, 20 P2d 387. In some circumstances the combination of several acts of ordinary negligence may, considering defendant's entire course of conduct, constitute gross negligence within the meaning of the statute. *Keefer v. Givens,* 191 Or 611, 620, 232 P2d 808.

However, in the instant case we need not discuss the question of gross negligence in order to dispose of the matter before us. The statute specifically sets forth "intoxication" of the operator as a separate ground upon which the liability of a host to his guest may be based. We are not concerned on this appeal with the matter of proper pleading, because no such question was raised in the trial court, nor has it been raised here. Subdivision 4 of paragraph IV of the amended complaint charges defendant with intoxication. We propose, therefore, to dispose of this case upon that issue. Upon the oral argument in this court, counsel for defendant was asked the following question:

"Supposing that there was evidence in this record sufficient to submit to the jury the question of intoxication of the defendant at the time and place of the accident, would that be sufficient to uphold this verdict?"

With commendable frankness, counsel replied:

"Oh, certainly. There is no question about that at all, your Honor. As counsel has said, we do oppose this because we think there is a failure of the testimony involved from two standpoints, but if either of them is sufficient, certainly this case should be affirmed."

The issue before us resolves itself into the simple question of whether there is substantial evidence in the record from which the jury might reasonably find that defendant was intoxicated at the time and place of the accident.

Plaintiff and defendant, together with Loren Leathers and Ralph Anderson, were on a fishing trip. They set up their headquarters at Echo auto camp, approximately 7 miles westerly from Scottsburg. They arrived there on Thursday, November 18, 1948. They

fished Thursday, had trouble with one of the motors used with their boats, and went to Reedsport that evening to have it repaired. They returned to their cabin about midnight and went to bed. On Friday, November 19, they started fishing again about 8:00 a.m. Because fishing was poor, they quit during the afternoon and returned to the cabin.

While fishing that day, they had some liquor to drink in the boat. Upon their return to the cabin, they had three or four drinks of whiskey. They changed clothes and then drove easterly along the highway, trying to locate a better place to fish. They arrived at Tommy's Tavern in Scottsburg about dusk. Some placed the time of arrival at 7:00 p.m. They all had a bottle of beer, some sandwiches, and coffee. About 8:00 p.m. defendant and Leathers commenced to play pool. Some women joined them in the game. Both said they played two games of rotation pool. Defendant admitted that he drank four bottles of beer, but his memory was quite poor as to the actual amount he did drink. In any event, the parties, with the exception of plaintiff, remained in the tavern until it closed between midnight and 1:00 a.m., and were consuming beer. We quote from defendant's own testimony:

"Q Now, do you remember that I ask [sic] you this question [Deposition of defendant]: 'Mr. Anderson, when you got through dinner, you and the other members of the party began drinking beer?' To which you answered 'Yes'. Do you remember making that answer?

"A Yes.

"Q Continuing on down with the question: 'And continued drinking beer up until the time you left the tavern?'

"A Yes.

"Q Is that true?

"A Yes.

"Q 'And while you were playing pool and while you were in this tavern, you were drinking beer this whole time?' to which you answered 'That is true.' Is that true?

"A That is right.

"Q Was there ever a time while you were in that tavern you didn't have a glass of beer in your hands?

"A Well, I didn't have one in may hand continuously, no.

"Q Well, I mean, beer was served you one after another and you were drinking it right through the whole period, or not. And did you not answer, 'Well, yeah'?

"A Yes, that is right.

"Q And that is the truth, isn't it?

"A Yes.

"Q And Mr. Leathers was likewise drinking beer with you, wasn't he?

"A That is right."

There is an abundance of similar testimony in the record. The defendant, Leathers, and Ralph Anderson had more or less hazy recollections as to just how much beer they did drink and, to some extent, disagreed as to the amount of whiskey they consumed.

According to defendant, it took him and Leathers approximately four hours (from 8:00 p.m. until the tavern closed) within which to play two games of rotation pool. That, in and of itself, might arouse a just suspicion as to defendant's condition. Though we do not qualify as experts upon the subject of rotation pool, nevertheless, a jury might find it hard to believe that even a novice at the game would require that length of time to twice run down 15 pool balls in rotation, unless his eye and mind were not functioning just

as they should have been; and apparently these men were not novices at the game.

■ The able trial judge in his instructions to the jury correctly defined "intoxication", as used in the statute, in the following words:

"Now, as I said before, there is one charge in the complaint that the defendant at the time of the accident was intoxicated from drinking alcoholic beverages to the extent that he was unable physically or mentally to safely and properly drive or operate his automobile. I will define the term 'intoxication', as used in the statute. Intoxication as used in the guest statute means being under the influence of intoxicating liquor to such an extent as to materially affect the driver's ability to operate a motor vehicle. It means the impairment of the person's physical and mental control. A person is intoxicated within the meaning of the guest statute when he is under the influence of intoxicating liquor to such an extent as to tend to prevent him from exercising the care and caution which a sober and prudent person would have exercised under the same or similar circumstances."

■■ It is a matter of common knowledge that the use of alcoholic beverages does not affect all persons alike. Some may imbibe frequently and in substantial quantities without showing any visible effects. Others may require only a small amount to produce startling results. Each individual case must be decided upon its own merits. As we said in *Walker v. Penner,* 190 Or 542, 550, 227 P2d 316:

"Ordinarily a state of intoxication is determined from the manner in which one walks or talks, or both, or from other well-known indicia of drunkenness. But one may be under the influence of intoxicating liquor and yet not show it by his speaking or walking or looks. In the final analysis, it is for

a jury to say from all the facts and circumstances in evidence whether one was under the influence of intoxicating liquor at a particular time and place."

■ As before observed, immediately prior to the accident involved here, defendant was operating his automobile along a crooked, "slick" highway (a highway with which he was not familiar), during an exceptionally dark night, with visibility very poor, and while it was raining "cats and dogs", disregarding curve-warning signs, and taking his eyes off the road and looking to the rear upon entering a curve, and at a rate of speed between 40 and 50 miles per hour. From these facts, a jury might reasonably infer that a driver of a motor vehicle would not be guilty of such apparent negligence, unless his mind was clouded, and his control of the automobile definitely affected, by the alcoholic beverages he had consumed. In other words, considering the amount of whiskey and beer defendant had drunk prior to the accident, combined with his conduct immediately prior to and at the time and place of the mishap, a jury might well find that defendant was intoxicated within the meaning of the law.

It should be pointed out that plaintiff did not remain in the tavern until it closed. He left there about 10:00 p.m., went to the automobile, got in the back seat, and slept until the parties were ready to leave. Also, the state police officer who investigated the accident testified that when he talked with Ralph Anderson about an hour following the accident, Ralph was "half drunk". The officer had no way of ascertaining whether defendant was intoxicated, because, as noted, the defendant was unconscious after the accident.

The record in this case paints a clear picture of a convivial group of men on an outing, with the ac-

couterments and extras generally considered "necessary" to a successful fishing trip. It is almost a matter of common knowledge that such "fishing trips" usually prove happy and successful ventures, unless and until someone spoils the party by deciding he wants to fish. They customarily do not terminate with such disastrous results as occurred in this case. This record affords but another example of the truism that "alcohol and gasoline is a mixture fraught with danger."

The judgment is affirmed.