Submitted on motion to dismiss appeal January 23, 1953, denied.
February 18, 1953; Argued March 24, 1954, reversed and
remanded with directions April 14, 1954

## HICKLIN *v.* ANDERS

253 P. 2d 897
269 P. 2d 521

130

*Meindl & Mize, Ray Mize* and *R. E. Kriesien,* of Portland, for the motion.

*Ray G. Brown,* of Portland, contra.

LUSK, J.

The case is before the court on motion of respondent, William H. Anders, to dismiss the appeal.

The action was for personal injuries. The appellant, Everett Hicklin, on April 2, 1952, recovered judgment for $15,000.00 against the respondents, Anders and Elbert G. Mulkey, administrator of the Estate of James Joseph Bannister, deceased, hereinafter called the ad-

ministrator. (Cleo Bannister was later appointed administratrix in the place of Mulkey.) On motion the court set aside the verdict against Anders and entered judgment in his favor notwithstanding the verdict. From that judgment Hicklin appealed, and the administrator likewise appealed from the judgment against him. Hicklin commenced garnishment proceedings against Anders, the administrator, and Pacific Indemnity Company, the administrator's insurance carrier, and recovered a judgment against the garnishee for $5,084.77. Pacific Indemnity Company took an appeal from that judgment. While these various appeals were pending Hicklin and his attorney, under date of January 12, 1953, executed an instrument designated "Covenant" by which they covenanted and agreed, in consideration of $4,750.00, not to proceed further against Pacific Indemnity Company or the administrator on account of Hicklin's injuries

> "or on account of said judgment for damages or on account of said judgment in said garnishment proceeding, and that said Everett Hicklin will not issue or cause to be issued or served further execution against either said Pacific Indemnity Company or said estate of James Joseph Bannister, deceased, or anyone on their behalf on account of said matters, and will not otherwise sue said Pacific Indemnity Company or said Cleo Bannister as said administratrix or individually, or said Elbert G. Mulkey as such administrator, for or on account of said injuries or anything arising out of the same or on account of said judgments or either of them."

The instrument further provided:

> "It is specifically understood and agreed, however, that this covenant, in no way restrains, restricts or prohibits said Everett Hicklin or anyone on his behalf from continuing said appeal as against said William H. Anders and proceeding with said

action against said William H. Anders, it being expressly understood that it is the intention of said Everett Hicklin to continue with said appeal against said William H. Anders to a final conclusion and to continue with said action against said William H. Anders, both in said Supreme Court and said Circuit Court, and if possible to recover the balance of said judgment as against said William H. Anders and this covenant is not to be construed or treated as a release or accord and satisfaction of any claim or demand which said Everett Hicklin has or claims to have against said William H. Anders.''

Contemporaneously, the garnishment proceedings and the administrator's appeal to this court were dismissed on stipulation of the parties, and Hicklin, by his attorney, executed a satisfaction of the judgment against Pacific Indemnity Company, garnishee, in the sum of $5,084.77. The instrument of satisfaction further provides that Hicklin

"does not satisfy the judgment made and entered herein on or about the 3rd day of April, 1952 in favor of plaintiff and against the above named William H. Anders and Elbert G. Mulkey as such administrator in the amount of $15,000.00 together with certain costs and disbursements, but said Everett Hicklin by his said attorney, does hereby acknowledge receipt upon said $15,000.00 judgment so made and entered on or about April 3, 1952, of the sum of $4,750.00 in partial satisfaction only of said judgment for $15,000.00 together with costs and disbursements.''

To support his motion Anders relies on the rule that the release of one or two or more joint tortfeasors releases all. *Stires v. Sherwood,* 75 Or 108, 145 P. 645. He concedes that in this state, as in most other jurisdictions, this rule has no application to a covenant not to sue. *McKay v. Pacific Bldg. Materials Co.,* 156

Or 578, 68 P2d 127; *Murray v. Helfrich,* 146 Or 602, 30 P2d 1053; *Keadle v. Padden,* 143 Or 350, 362, 366, 20 P2d 403, 22 P2d 892. But he argues that in this case the suit is an accomplished fact and therefore an agreement not to sue is meaningless; and that the "Covenant" is in fact an accord and satisfaction which operates as a discharge of the judgment and of both joint tort-feasors, citing 1 Am Jur 257, Accord and Satisfaction §§ 8, 73; *Clay v. Hoysradt,* 8 Kan 74; *Cooper v. Sagert,* 111 Or 27, 223 P 943; Restatement, Torts § 886.

It is sufficient to say of the decisions cited that they are not in point. As to the claim that what the parties did amounted to an accord and satisfaction, precisely the same argument was made in *McKay v. Pacific Bldg. Materials Co.,* supra, with respect to the covenant not to sue involved in that case, and was rejected. The only difference between the two cases is that in the one the agreement was made before judgment and in the other after judgment. In the McKay case payment was made in settlement in order to get rid of an unliquidated claim, and in this case in order to get rid of the consequences of a judgment from which an appeal had been taken and was pending. In both the intention is made clearly to appear that the money was not accepted in satisfaction of the entire claim and that the settlement made with one defendant should not affect the injured party's rights against the other. According to 45 Am Jur 702, Release § 37, "There appears to have been an increasing tendency in the later cases to give effect to the actual intention of the parties so far as possible." The numerous cases digested in 124 ALR 1306 and 104 ALR 852 support that statement. See, also, 66 ALR 209 and 50 ALR 1072. Many of the earlier cases are cited in *Stires v. Sherwood,* supra at p. 113. No reason has been suggested, nor does any occur to us, which

warrants the assertion that there is an irreconcilable conflict between the acts of Hicklin and his expressed intention to preserve his rights against Anders.

Our research has discovered but two cases involving similar facts. These are *Pertroyeanis v. Pirola,* 205 Ill App 310, and *Pennington v. Bevering,* (Tex) 17 SW2d 772. In the former case the court held that acceptance by the plaintiff of payment of a part of a judgment from one of the joint tort-feasors operated to discharge the other, notwithstanding the expressed intention of the parties that this should not be its effect. There is no opinion in the case, but simply an "Abstract of the Decision", which states the court's conclusions. The opposite result was reached by the Texas court in *Pennington v. Bevering,* which held that the instrument of release evidenced the intention of the parties that the creditor reserved the right to proceed for the balance against the nonsettling judgment debtor and that this intention should be given effect. In our opinion the Texas court's decision is sound and accords with modern judicial thinking relative to settlements of this kind. At least it can be said for this view of the matter that it "offers a way for a party to buy his peace and allows an opportunity to compromise a doubtful claim without requiring an injured party to forego the right of full compensation against known wrongdoers." *Cook v. City Transport Corp.,* 272 Mich 91, 261 NW 257.

In *Black v. Martin,* 88 Mont 256, 292 P 577, the court reviewed extensively the judicial decisions and the observations of eminent text writers, showing the disfavor into which has fallen the rule that a release to one of several joint tort-feasors is a discharge to all, and the efforts of the courts to avoid application of that rule whenever possible. Dean Wigmore, according

to the Montana court, called the rule a "surviving relic of the Cokian period of metaphysics." The case before the court did not involve an agreement not to sue but a release to one, with a reservation of rights against another joint tort-feasor. Holding that effect should be given to the intention of the parties, the court said:

"As each tort-feasor is liable for the entire damage, if one sees fit to secure acquittance for himself by compromise with the injured person, he does no wrong to those who are jointly liable with him. How can they complain if he has paid part of the damage? They are not prejudiced by the settlement, but on the contrary are benefited, for each is entitled to have the amount of any judgment rendered against him reduced by the amount paid by his cotort-feasor.  *  *  *

"The law favors compromises. This is especially true in tort actions, not only because they relieve the labors of courts, and avoid expense, but also because, where the parties agree between themselves upon a settlement of the claim, the result reached is frequently a more equitable adjustment than is possible to be had in a court of law. (10 Virginia Law Review, 72.)"

Dissatisfaction with the "finespun" and "over-technical" law of joint tort-feasors (*Cook v. City Transport Co.*, supra) has led to the enactment of statutes, some of which substantially abolish the rule that a release to one of several joint tort-feasors discharges all, while others provide that releases must be given effect according to the intention of the parties. 45 Am Jur 702, Release § 37. No statute is needed, however, to enable a court to adopt the latter rule, and we, therefore, hold that, since Hicklin's intention in executing the covenant and in partially releasing the judgment was not to release Anders, Hicklin's right to proceed with the appeal against Anders has not been affected,

and the motion to dismiss must, therefore, be denied. It need only be added that the payment of $4,750.00 to Hicklin extinguishes *pro tanto* the amount of damages, if any, which may be ultimately found recoverable by Hicklin from Anders. *Murray v. Helfrich,* supra; *Stires v. Sherwood,* supra at p. 113.

## ON THE MERITS

*Ray G. Brown,* of Portland, argued the cause and filed briefs for appellant.

*Ray Mize* argued the cause for respondent. On the brief were Meindl & Mize and R. E. Kriesien, of Portland.

Before LATOURETTE, Chief Justice, and ROSSMAN, TOOZE and PERRY, Justices.

TOOZE, J.

This is an action for damages for personal injuries claimed to have been suffered as the proximate result of the negligent operation of two motor vehicles, brought by Everett Hicklin, as plaintiff, against William H. Anders and Elbert G. Mulkey, administrator of the estate of James Joseph Bannister, deceased, as defendants. The trial resulted in a verdict and judgment in favor of plaintiff and against both defendants in the sum of $15,000.

Defendant William H. Anders moved the court for an order vacating the judgment against him and for judgment in his favor notwithstanding the verdict. As an alternative motion he moved for an order to set aside the verdict and judgment against him and

to grant a new trial. The trial court entered separate orders sustaining each motion. Plaintiff appeals.

The order allowing the motion for judgment in favor of defendant Anders notwithstanding the verdict is based upon the ground (as stated in the order):

"* * * that there was no proximate causal relationship between the negligence of the defendant William H. Anders and plaintiff's injury, and that there was no substantial evidence introduced during the trial that the proximate cause of plaintiff's injury was the negligence of the defendant Anders, and that the injury to the plaintiff was solely and proximately caused by the negligence of the deceased, James Joseph Bannister, and therefore the court should have directed a verdict in favor of the defendant William H. Anders * * *."

The order granting the motion for a new trial is based upon the alleged error of the trial court in failing to give to the jury one of defendant Anders' requested instructions.

The accident occurred on the Ross Island bridge in Portland, Oregon, just after midnight on March 7, 1951. Ross Island bridge is divided into four lanes for traffic, two for east-bound traffic and two for west-bound traffic. On the night in question, icy conditions prevailed on the bridge, and a truck belonging to the city of Portland was engaged in sanding operations. The sand truck was traveling east in the inside lane of traffic at a rate of speed from three to five miles per hour. Plaintiff and a co-worker were employed on the rear of the truck shoveling sand onto the two south lanes.

Defendant Anders was traveling east on the said bridge using the inside lane. He negligently collided with the sand truck and also with a taxicab traveling

east in the outside lane. His automobile came to rest with three .or four feet of its rear extending into the outer lane. Shortly thereafter, the automobile negligently operated by Bannister, also traveling east in the inside lane and at a rate of speed of 45 to 50 miles per hour, collided with the Anders car and the truck. Bannister was killed in the accident and, as a result of the second collision, plaintiff suffered the injuries of which he complains.

■ It is now hornbook law in this state that, in passing upon a motion for a directed verdict in favor of a defendant, the evidence in the record must be viewed in the light most favorable to plaintiff. He is entitled to the benefit of every reasonable inference that can be drawn from the evidence in his favor. *Glascock v. Anderson,* 198 Or 499, 503, 257 P2d 617.

■ It also is well established that the question of whether a particular act was a proximate cause of the injury complained of is ordinarily one for decision by the jury, and it is only where the facts are such that all reasonable men must draw the same conclusion from them that the question of proximate cause becomes one of law for the court. *Wintersteen v. Semler,* 197 Or 601, 620, 250 P2d 420, 255 P2d 138; *Kukacka v. Rock,* 154 Or 542, 544, 61 P2d 297.

■ We have carefully examined the record in this case. The evidence is almost conclusive that both Anders and Bannister were negligent in some, if not in all, respects as charged in the complaint. There also is substantial evidence in the record from which the jury might find that the negligence of Anders directly combined and concurred with that of Bannister to proximately cause plaintiff's injuries. It is clear that the negligence of Anders was not the sole proximate cause, but the jury could well find it to be a concurring

cause; his negligence had not spent itself at the time of the final impact. The testimony of the investigating police officer as to what Anders told him immediately following the accident as to how the accident happened, although not too definite, was of itself sufficient to make the question of Anders' liability one of fact for determination by the jury. Moreover, as the result of Anders' negligence, and after the collision with the truck, his car at least partially blocked the outside east-bound lane, thereby creating a hazard that the jury might find directly contributed to the later collision with the Bannister car, resulting in the injuries to plaintiff. This case is governed by the rules announced in *Birks v. East Side Transfer Co.*, 194 Or 7, 241 P2d 120.

■ "Negligence" is negligence, whether it be negligence per se because of a violation of a state statute or city ordinance or whether it arises because of the failure to exercise that degree of care and caution that a reasonably prudent person would exercise in like or similar circumstances, such as a failure to maintain proper control or a lookout. Anders' negligence created a hazardous condition that continued to exist at the time Bannister's car collided with the Anders car and the truck, just as the tractor-trailer negligently created a continuing hazardous condition in *Birks v. East Side Transfer Co.*, supra.

The trial court erred in setting aside the judgment and entering judgment in favor of defendant Anders notwithstanding the verdict.

The defendant requested the following instruction:

"The evidence in this case shows that there were separate impacts with the truck upon which the plaintiff was working. The first one occurring when the Anders car collided with the truck, and

another impact occurring when the vehicle of the deceased Bannister struck the Anders car and the truck. In that regard I instruct you that if you should find from the evidence in this case that the negligence, if any, of the deceased Bannister was so unusual and extraordinary as to interrupt the natural sequence of events and were intervening acts of negligence of a nature the occurrence of which could not have been anticipated by the defendant Anders, and without which the plaintiff's injuries, if any, would not have been sustained, then your verdict must be for the defendant Anders."

■ In many prior decisions of this court we have announced the rule that, in considering whether error was committed by the trial court in failing to give a requested instruction, the court's entire charge to the jury must be considered; and if the subject matter of the requested instruction has been adequately covered by the court's own instructions, no error has been committed. For example, see *Denton v. Arnstein,* 197 Or 28, 54, 250 P2d 407; *Phillips v. Colfax Company, Inc.,* 195 Or 285, 310, 243 P2d 276, 245 P2d 898; *Senkirik v. Royce et al.,* 192 Or 583, 596, 235 P2d 886; *Hughes v. Gilsoul,* 191 Or 557, 561, 230 P2d 770; *Barnes v. Davidson et al.,* 190 Or 508, 521, 226 P2d 289.

■ We have carefully considered the instructions given the jury and find that the trial judge fully, fairly and correctly instructed as to the law applicable to all the issues in the case, including substantially the subject matter of the requested instruction. It was not error for the court, in the exercise of its discretion, to refuse the giving of the instruction. However, in what we have said we do not wish to be understood as approving the requested instruction in the form presented. For the purposes of this opinion, we need not

discuss that phase of the question. The court erred in granting a new trial.

While this appeal was pending, William H. Anders died and Frances E. Anders, as administratrix of the estate of William H. Anders, deceased, has been substituted as party defendant.

The judgment is reversed and the cause remanded with directions to reinstate the judgment in favor of plaintiff.