Argued December 2, 1968, reversed and remanded
February 13, 1969

CRANFORD, *Appellant, v.* McNIECE,
*Defendant,*
SAMPSON, *Respondent.*

YOUNG, *Appellant, v.* McNIECE,
*Defendant,*
SAMPSON, *Respondent.*

CRANFORD, *Appellant, v.* McNIECE,
*Defendant,*
SAMPSON, *Respondent.*
450 P. 2d 529

*Randolph Slocum,* Roseburg, argued the cause for appellants. With him on the briefs was D. R. Dimick, Roseburg.

*Eldon F. Caley,* Roseburg, argued the cause for respondent. With him on the brief were Long, Neuner, Dole & Caley, Roseburg.

Before PERRY, Chief Justice, and MCALLISTER, SLOAN, O'CONNELL, GOODWIN, DENECKE and HOLMAN, Justices.

DENECKE, J.

The issue in these three consolidated cases is whether documents entitled "Covenant Not to Sue" bar plaintiffs from maintaining actions against Sampson. The trial court held that these documents did bar plaintiffs, and they appeal.

Two of the plaintiffs were injured and Janice Cranford was killed in an automobile collision between cars driven by one McNiece and Sampson. An action was commenced naming both McNiece and Sampson as defendants. During the first part of 1966 the plaintiffs entered orders of involuntary nonsuit as to the de-

fendant McNiece. Subsequently, each plaintiff executed a document evidencing a settlement with McNiece. The documents are all legally similar. The one executed by the plaintiff Roy Young, administrator, is as follows:

## "COVENANT NOT TO SUE

"KNOW ALL MEN BY THESE PRESENTS, that the undersigned ROY YOUNG, the duly appointed, qualified and acting Administrator of the Estate of JANICE CRANFORD, deceased, having been appointed as such on the 21st day of August, 1964, by the Circuit Court of the State of Oregon for the County of Douglas, in proceedings bearing Registry No. 8198, and thereafter having qualified as such, for and in consideration of the sum of Five Thousand Seven Hundred Fifty Dollars ($5,750.00), to me in hand paid by MARTHA McNIECE, the receipt and sufficiency whereof is hereby acknowledged, for and on behalf of said estate, do hereby now and forever covenant and agree, for myself and my successors, and for and on behalf of said estate, not to sue the said Martha McNiece, and to refrain forever from instituting, pressing, collecting or in any way aiding or proceeding upon any and all claims, judgments, demands, causes of action, suits and proceedings of any kind, either at law or in equity, which the said estate ever had, now has, or may have, against the aforementioned Martha McNiece, her heirs and assigns and all other persons, firms and corporations whatever in interest with her, or any of them, arising out of a certain accident which occurred on or about August 25, 1962, at or near Myrtle Creek, Oregon, and in which the said Janice Cranford was killed.

"It is expressly understood and agreed that the consideration aforesaid has been received by the undersigned as such Administrator, acting on behalf of said estate, in full payment for this cove-

nant not to sue, notwithstanding any injury or damages sustained in said accident, whether known or unknown, foreseen and/or unforeseen.

"This covenant is made by the undersigned with full knowledge of the situation, with the approval of the aforesaid Court and under advice of his counsel, and without any representation of any kind being made by the parties making payment for this covenant, or any of their representatives. The undersigned represents and guarantees that all claims, liens or charges against the consideration for this covenant have been completely satisfied, and agrees to hold the parties making payment for this covenant and all those in interest with them, harmless against any and all further loss, cost, expense, liens, claims, actions and suits in the premises.

"Nothing herein contained shall be construed as an admission of any legal liability in the premises, it being understood that this is a compromise of all claims, past, present or future, against the parties making payment for this covenant, and all those in interest with them in the premises.

"Included herein, but without limitation thereto, are all claims asserted in that certain case in the Circuit Court of the State of Oregon for the County of Douglas, bearing registry No. 28262, which said case may now be dismissed upon application of any attorney of record therein.

"DATED this 5th day of April, 1966.

APPROVED:
/s/ D. R. Dimick
Attorney for Administrator

> /s/ Roy O. Young
> Administrator of the Estate of
> Janice Cranford, deceased."

The other documents are, as noted, similar, with each plaintiff inserting his name in the document he

executed. The name of defendant Sampson does not appear in any of the documents.

Thereafter, plaintiffs filed amended complaints alleging payments by McNiece and seeking judgments only against Sampson. Sampson filed amended answers setting forth the above-quoted document and alleging that the plaintiffs were thereby barred from maintaining the actions against Sampson. Plaintiffs filed motions to strike and demurred to such defense and Sampson in turn filed motions to dismiss on the ground that Sampson had been released. The trial court overruled the plaintiffs' demurrers, granted the motion to dismiss and entered judgments of dismissal.

The original rule was that a release of one tortfeasor releases all others. The evolution of this rule is an excellent example of the history of a rule of law based on sterile and questionable logic, rather than reality. After an initial adherence to this rigid rule, courts continued to announce their adherence to the rule but created new legal concepts to achieve more just results. Finally, many courts expressly rejected the original rule and applied the usual law of contracts.

The original rule and the reasoning used in formulating it were recognized in *Stires v. Sherwood,* 75 Or 108, 112, 145 P 645 (1915):

> "* * * The well-established rule of law is that the absolute discharge of one joint tort-feasor from liability on account of the alleged tort is a release of all the others. The reason of the precept is that the plaintiff has but one cause of action and can reap but one satisfaction."

We took cognizance in that case that there were numerous decisions from other jurisdictions which seemingly adhered to the original rule but which developed

distinguishing concepts to reach results in conformance with the intention of the parties.

In *Keadle v. Padden,* 143 Or 350, 361-366 (1933), this court applied one of these distinctions or exceptions to the original rule and held that the joint tortfeasor was not released. In that case an injured employee, the plaintiff, on July 1, 1930, signed a document which appeared to be a release of his employer, Varney Air Lines, from any liability for injuries to plaintiff. The defendant Padden, who was being sued for malpractice in the treatment of plaintiff for the injury he received while working for Varney, claimed that this release also released him. Plaintiff was permitted to introduce into evidence another document executed by him on April 1, 1931, purporting to show "the real understanding between him [plaintiff] and the Varney Air Lines." 143 Or at 363. This later document did not use the word "released" but stated that plaintiff "does hereby covenant and agree    *    *    * that said Floyd Keadle [plaintiff] will not commence, bring or maintain any action at law    *    *    * against said Varney" for his injuries. 143 Or at 364. The document also specifically excepted the defendant Padden from plaintiff's promise not to sue Varney.

We held: "[T]he settlement made by the plaintiff and his employer is nothing more than a covenant not to sue and would not operate as a release of defendant." 143 Or at 366. *Stires v. Sherwood,* supra. (75 Or 108), is quoted in support of the holding.

In *McKay v. Pacific Bldg. Materials Co.,* 156 Or 578, 589, 68 P2d 127 (1937), the document was phrased in terms of a covenant not to sue and expressly reserved the right to bring an action against another alleged tortfeasor. We stated: "The authorities are in conflict as to the effect of such an agreement as the

one above set out; but this court has recognized the rule which construes such an agreement as a covenant not to sue."

Our latest decision on this issue is *Hicklin v. Anders,* 201 Or 128, 253 P2d 897, 269 P2d 521 (1954). The document was similar to that construed in *McKay v. Pacific Bldg. Materials Co.,* supra (156 Or 578), and the *McKay* decision was held to be controlling.

The court, however, was not satisfied with continuing to recite the old discredited rule and then distinguishing the case before it because the document was a covenant not to sue or because the document reserved the right to sue defendant. Instead, we expressly adopted the principle that the intention of the parties to the document will determine whether it releases tortfeasors not parties to the document.

> "Dissatisfaction with the 'finespun' and 'over-technical' law of joint tort-feasors (*Cook v. City Transport Co.,* supra) [272 Mich 91, 261 NW 257 (1935)] has led to the enactment of statutes, some of which substantially abolish the rule that a release to one of several joint tort-feasors discharges all, while others provide that releases must be given effect according to the intention of the parties. 45 Am Jur 702, Release § 37. No statute is needed, however, to enable a court to adopt the latter rule, and we, therefore, hold that, since Hicklin's intention in executing the covenant and in partially releasing the judgment was not to release Anders, Hicklin's right to proceed with the appeal against Anders has not been affected, and the motion to dismiss must, therefore, be denied. * * *."
> 201 Or at 135-136.

This conclusion is in accord with *Breen v. Peck,* 28 NJ 361, 146 A2d 665, 73 ALR2d 390 (1958), and *Gronquist v. Olson,* 242 Minn 119, 64 NW2d 159 (1954), and other cases discussed at 73 ALR2d 403, 425 (1960).

■ In the application of this modern principle, the document of compromise ordinarily will be only one of the pieces of evidence of the intent of the parties, not the sole evidence.[①]

■ The parol evidence rule is not applicable. "* * * [P]arol evidence can be used to vary or contradict a contract when the litigation is between a party to the contract and a stranger thereto. * * * [Citations]. This is true even where the evidence is offered by the party to the contract. * * *." *Carolina Casualty v. Oregon Auto.*, 242 Or 407, 413, 408 P2d 198 (1966).

■ Therefore, parol evidence of the plaintiff's intentions can be introduced when the plaintiff has executed an agreement releasing or covenanting not to sue one tortfeasor.

> "It appears that sometime after the injury respondent made a settlement with his employer and executed an agreement in writing releasing the employer and its insurer only, from any claims from damages. This writing was introduced in evidence by defendant as purporting to show that plaintiff had been compensated in full for his injuries. In order to rebut that contention, plaintiff called as witnesses, a Mr. Swain, who was the attorney for the insurer of the employer at the time of the injury and who prepared the release, and also called a Mr. Cuddeback, manager of plaintiff's employer at that time. These witnesses gave testimony, over the objection of defendant, as to what the release was intended to cover. The appellant is not a party,

---

① In cases in which the court held that the instrument did not bar the plaintiff, such as Hicklin v. Anders, supra (201 Or 128), and McKay v. Pacific Bldg. Materials Co., supra (156 Or 578), the defendant had to rest his case on the instrument alone; other evidence was not offered to show that the plaintiff intended to release the defendant.

nor a successor in interest of any of the parties, nor were any of the parties a representative of defendant and, therefore, he cannot invoke the inhibition of the statute against parol testimony. Oregon Code 1930, § 9-212." *Keadle v. Padden,* supra (143 Or at 361-362).②

■ Inasmuch as our decision is that the instrument is not conclusive of the intention of the plaintiff on the question of whether or not he intended to thereby release defendant and accept the payment by McNiece as full satisfaction for his claim the trial court erred in deciding the issue on the pleadings and entering judgments of dismissal against plaintiffs.

Reversed and remanded.

---

② When the Restatement of Torts was written the American Law Institute believed the prevailing law was to the contrary. 4 Restatement, Torts § 885, 462, comment *d.*:

"* * * If, however, there is language in the release which manifests that the releasor intended to preserve his rights against the others, effect is given to this manifestation. If such a manifestation does not appear upon the document containing the release, a rule analogous to the parol evidence rule prevents giving effect to the intention of the parties that the other tortfeasor shall not be discharged. * * *."